David ASHFORD, Appellant,

v.

Lonnie E. EDWARDS; Attorney General for the Eastern District of North Carolina, Appellees.

No. 85–6288.

United States Court of Appeals, Fourth Circuit.

Argued Oct. 8, 1985.

Decided Dec. 17, 1985.

Alan M. Anderson, Minneapolis, Minn., for appellant.

Barry S. McNeill, Asst. Atty. Gen. of North Carolina (Lacy H. Thornburg, Atty. Gen. of North Carolina, Richard N. League, Asst. Atty. Gen., Raleigh, N.C., on brief), for appellees.

Before WIDENER and MURNAGHAN, Circuit Judges, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

In a state court in North Carolina, Ashford was convicted on two counts of attempted armed robbery. Two concurrent sentences were imposed. After a direct appeal and resort to state post conviction

remedies proved unavailing, Ashford sought federal habeas corpus relief, claiming that conviction on the two counts violated the federal double jeopardy clause.

A judge of this court issued a certificate of probable cause for Ashford's appeal from the district court's denial of relief.

We now affirm.

## I.

Mike and Pete Manos, father and son, were proprietors of the Shamrock Restaurant in Fayetteville, North Carolina. On the night of the attempted robbery, they closed the Shamrock at about 11:00 o'clock in the evening. Pete, who had $10 in his pocket and a radio in his hand, proceeded directly to the automobile in the parking lot, while Mike lingered to activate the restaurant's alarm system. Pete testified that after he placed the radio in the car, Ashford approached him from some nearby bushes. Ashford pointed a .22 caliber rifle at Pete and told him not to move.

A few seconds later, Mike, who had approximately $100 of the restaurant's receipts in his pocket, approached the car. According to Mike and Pete, Ashford pointed the rifle at Mike and said, "Give me your money or I will blow your brains out." Mike reached into his coat pocket, quickly brought forth a .32 caliber pistol, and shot Ashford in the thigh. Pete seized the rifle and subdued Ashford.

The first count of the two count indictment charged Ashford with attempted armed robbery of Pete Manos of "the personal property of Pete and Mike Manos, a partnership, doing business as the Shamrock Restaurant." The second count charged him with the attempted armed robbery of Mike Manos of the same partnership money. This is the basis of Ashford's claim that there was but a single offense.

## II.

■ This is not a case of successive trials. It involves a claim that multiple punishments were imposed for a single offense. In considering such a claim, the first inquiry must be directed to the question of legislative intention as to whether a continuing criminal episode should be treated as a single offense for which only one punishment may be imposed or as two or more " 'units of prosecution' based upon particular factors of time or other circumstances dividing the whole into discrete parts." *Thomas v. Warden*, 683 F.2d 83, 84 (4th Cir.1982); *Missouri v. Hunter*, 459 U.S. 359, 366, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983).

N.C.Gen.Stat. § 14–87 makes it a crime to take, or attempt to take, by threat or force the personal property of another. *See State v. Rogers*, 273 N.C. 208, 159 S.E.2d 525, 527 (1968). When there are two or more victims of a violation of § 14–87, the North Carolina courts have drawn a distinction based upon ownership of the property stolen. If two or more victims are each robbed of his own property, there are multiple offenses. Thus, in *State v. Gibbs*, 29 N.C.App. 647, 225 S.E.2d 837, 839 (1976), the defendant, at knife point, took a purse from one store clerk and the night's proceeds from another. The court found that there were two separate armed robbery offenses. Similarly, in *State v. Lewis*, 28 N.C.App. 212, 220 S.E.2d 408, 409 (1975), the armed robberies of six victims at one location were held to have been separate and distinct offenses.

In contrast, although two store clerks were threatened and cash was removed from two registers, there was only one offense when the only property taken was cash belonging to the store. *State v. Potter*, 285 N.C. 238, 204 S.E.2d 649, 659 (1974).

In those cases, the success of the robbers in obtaining possession of the property demonstrates their intention. In this case, Ashford's purpose was frustrated, but surely it cannot be supposed that when he said "Give me your money or I will blow your brains out" he intended to demand only the restaurant receipts and not other money that might be on the persons of Mike or Pete.

■ It is of no moment that Ashford did not immediately demand that Pete hand over his money. Such a demand is implicit when Ashford threatened Pete and sought to control the situation by pointing the gun at him and commanding him to freeze. *State v. Smith*, 300 N.C. 71, 265 S.E.2d 164, 168–69 (1980). He had little time to say anything else before Mike appeared. When he did explicitly demand money, he was pointing the gun at Mike, but he was facing Pete. Surely a jury could reasonably have found that the demand was addressed to both victims.

A principal purpose of § 14-87 was to increase the penalties for armed robberies effected by the use of dangerous weapons. The North Carolina Supreme Court has said the use or threatened use of firearms is "the main element of the offense." *State v. Mull*, 224 N.C. 574, 31 S.E.2d 764, 765 (1944). Ashford threatened both Pete and Mike Manos, and, since each had money on his person which would have been produced if they had acquiesced in Ashford's demand, state law authorized two separate convictions.

The distinction drawn in North Carolina between an armed robbery of two people of money belonging to each and the robbery of two clerks of monies belonging to the store may have substantial validity in the context of completed robberies. It makes little sense in the context of attempts. If a man threatens to blow the brains out of another unless the other hands over his money and a brandished weapon proves the reality of the threat, there has been an attempted armed robbery even though the victim has no money and the robbery is frustrated for that reason. If there are two victims, one of whom has money and the other of whom does not, there has been an attempted armed robbery of the penniless one whether or not the robbery of the other is completed. If each of two victims possesses money, but all of it is owned by the store in which they work as clerks, it logically would follow that two attempts had been made even though under state law if the robber achieved his purpose and obtained possession of all the money he could be convicted of but one armed robbery offense.

North Carolina's courts have not considered the problem in the context of attempts. We need not rest our decision on our notion of what the law in that context should be, however, for there were two separate offenses even if the rule of *Gibbs, Lewis* and *Potter* were applied.

### III.

While it is clear that under state law the jury could have found beyond a reasonable doubt that Ashford committed two offenses, Ashford contends that the indictment charged but one since each count charged that he attempted to rob Pete and Mike of the restaurant's monies. The variance between the indictment and the proof, he contends, is fatal.

■ Variances and other deficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process. There was no such unfairness here.

■ Ashford's defense was that he had threatened no one and demanded nothing. He claimed that he had obtained the rifle in a trade that afternoon and was seeking a ride to his home. He was there courteously requesting a favor, he claimed, pointed the rifle at no one and made no demand for money. His defense simply had nothing to do with the ownership of money in the pockets of Mike or Pete, and he was not unconstitutionally prejudiced by the identification of only the restaurant receipts in the indictment.

### IV.

Since the proof showed, and the jury found, that Ashford threatened each of the Manos men and demanded money of each of them without limitation, there was no federal constitutional infirmity in convicting him of two attempted armed robberies.

AFFIRMED.