995 F.2d 1256
 Irvin Jefferson WILSON, Petitioner-Appellee,
v.
Richard S. LINDLER, Warden, McCormick Correctional
Institution; State of South Carolina; Attorney
General of South Carolina; T. Travis
Medlock, Attorney General,
Respondents-Appellants.
 No. 92-6613.
 United States Court of Appeals,
Fourth Circuit.
 Argued Feb. 5, 1993.
Decided June 11, 1993.
Order Granting Rehearing En Banc and
Vacating Decision Aug. 2, 1993.
 
 Widener, Circuit Judge, dissented with opinion.
 Donald John Zelenka, Chief Deputy Atty. Gen., Columbia, SC, for appellants.
 Parks Nolan Small, Federal Public Defender, Columbia, SC, for appellee.
 Before WIDENER, PHILLIPS, and HAMILTON, Circuit Judges.
 OPINION
 HAMILTON, Circuit Judge:
 
 
 1
 The State of South Carolina (State) appeals from the conditional grant of a writ of habeas corpus issued by the district court setting aside the state conviction of petitioner-appellee, Irvin Jefferson Wilson (Wilson). For reasons stated below, we affirm.
 
 
 2
 * As a result of a fire in his residence located in Greenville, South Carolina, Edward Meekins moved into his sister's home in Greer, South Carolina. While living at his sister's home, Meekins kept all of his possessions that had not been damaged in the fire in the front room and the kitchen of his house in Greenville. Thereafter, William Tate and Claude Walker observed an individual inside Meekins' house.
 
 
 3
 As Tate and Walker approached the front of the house, they yelled for the individual to come out. At that time, Wilson walked out the back door. Wilson, who had both hands in his pockets, stated he was a friend of Meekins and was looking for him.
 
 
 4
 Tate and Walker then entered the house. They noticed that the front door was pried open and the front room had been rummaged through. They also observed a trash can on the back porch that contained clothing items, kitchen utensils, coal, and wood. The police were then called to the house.
 
 
 5
 After the police arrived at the house, they proceeded to search for Wilson. Wilson was discovered hiding in some bushes near Meekins' house and was arrested. Wilson told the arresting officer that he thought Meekins was dead and that his property had been abandoned. Wilson handed over some items taken from the house.
 
 
 6
 Wilson was indicted for second degree burglary of a dwelling in violation of S.C.Code Ann. § 16-11-312(A) (§ 16-11-312(A)).[1] In pertinent part, the indictment charging Wilson with a violation of § 16-11-312(A) reads:
 
 
 7
 INDICTMENT FOR BURGLARY (DWELLING) SECOND DEGREE VIOLATION § 16-11-312(A)
 
 
 8
 . . . . .
 
 
 9
 That Irvin Jefferson Wilson did in Greenville County on or about December 18, 1988, willfully and unlawfully enter the dwelling of Ed Mekin [sic] without consent and with intent to commit a crime therein.
 
 
 10
 Joint Appendix (J.A.) at 112. At the commencement of the trial, the State sought to proceed under two distinct theories of second degree burglary: (1) unlawful entry of a "dwelling," in violation of § 16-11-312(A); and (2) unlawful entry of a "building," in violation of S.C.Code Ann. § 16-11-312(B) (§ 16-11-312(B)).[2]
 
 
 11
 Prior to closing arguments and jury instructions, the following colloquy occurred between the solicitor, defense counsel and the trial court:
 
 
 12
 Solicitor: Let me bring up one matter about as far as what your charge will be on a dwelling and a building. In other words, what I'm getting at, is this something the jury's going to have to find right here that he was--or is--I'm trying to know if I need to make comments to the jury about these two--
 
 
 13
 The Court: Well, actually, is there any question in this case but what this was a dwelling wherein someone lived. There really is no issue to that, is there, Mr. Walsh?
 
 
 14
 Mr. Walsh: Even under a most liberal reading of State v. Ferebee, I don't think there's any indication of a permanent abandonment. I will not even ask the Court to charge that it had been abandoned. I think the--
 
 
 15
 The Court: Well, if that's the case, if the only issue is whether or not he had any intent to steal if he was inside the house, and that would be the only issue, then those indictments would not go to the jury.
 
 
 16
 Solicitor: Okay. Well, in--
 
 
 17
 The Court: There'd be no need to charge--
 
 
 18
 Solicitor: In other words, you're going to tell them whether this is a dwelling or a building. I mean it could be either one or we just don't even have an argument about it, that it's a dwelling.
 
 
 19
 The Court: I'm saying that it's a dwelling. I don't see that there's any issue concerning that. I mean I'll charge the--that portion of second degree, entering a dwelling with intent to steal or commit some other crime but I just don't see how they could--
 
 
 20
 Mr. Walsh: Your Honor, I--
 
 
 21
 The Court: And you're not going to argue the fact that it is not a dwelling, so--
 
 
 22
 Mr. Walsh: No sir. I would believe--I would believe that the proper charge would be a building with the enhancement. In other words, we would have burglary in the second degree two ways. Either a dwelling or a building with enhancement. The State has elected by introducing the prior convictions to go with a building and enhancement.
 
 
 23
 The Court: No, I don't think--
 
 
 24
 Solicitor: I'm going both ways. I mean--
 
 
 25
 The Court: Do you want to go both ways, Mr. Walsh?
 
 
 26
 Mr. Walsh: Your Honor, I prefer to go only on the--I prefer, obviously, to go neither way, but I believe the state has elected to go under building with enhancement.
 
 
 27
 The Court: No, I think that the state can go on the other, but I was simply trying to keep away from the jury the prior convictions but if you want it both ways--
 
 
 28
 Solicitor: That's what I would prefer, to charge them that it can be burglary in either way, you find it either way.
 
 
 29
 The Court: Okay.
 
 
 30
 J.A. at 85-87.
 
 
 31
 Thereafter, the trial court gave the following instruction:
 
 
 32
 Under Section 16-11-312 of our Code of Laws, burglary in the second degree can occur in one of four ways. Insofar as this case is concerned, only two would be applicable and the first of which of these, burglary in the second degree is the entering of a dwelling in the day time without consent and with the intent to commit a crime therein. Or, secondly, it is the entering of a building in the day time without consent and with the intent to commit a crime therein where the person entering has a prior record of two or more convictions for burglary, housebreaking or a combination of the two. Now, in either instance, the statute says that there must be an intent to commit a crime therein and the state must prove that this defendant, if he entered this house, had the intent to commit a crime once inside but the intended crime need not have been actually committed or accomplished. With respect to the two provisions, the one, entering a dwelling; the other, entering a building. The statute defines dwelling as being a structure wherein someone sleeps or the living quarters of a building used or normally used for sleeping, living or lodging by a person. The statute defines building as being any structure, vehicle, watercraft or aircraft where any person lodges or lives or where people assemble for business, government, education, religion, entertainment, public transportation, public use or where goods are stored.
 
 
 33
 So, ladies and gentlemen, the state, in order to prove this defendant guilty, must prove either one of two things with respect to burglary in the second degree. First of all, that this defendant entered a dwelling in the day time without consent and with the intent to commit a crime once inside or, secondly, that he entered a building in the day time without consent and with the intent to commit a crime once inside and that he has a prior record of two or more convictions of burglary, housebreaking or a combination of the two.
 
 
 34
 J.A. at 96-98. Wilson did not object to the trial court's instructions. The jury found Wilson "guilty as charged" by a general verdict.[3]
 
 
 35
 Wilson appealed his conviction to the Supreme Court of South Carolina. The Supreme Court of South Carolina upheld Wilson's conviction for second degree burglary under Supreme Court Rule 23 and the following authorities: State v. Munn, 292 S.C. 497, 357 S.E.2d 461 (1987); State v. Pace, 43 S.C.L. (9 Rich) 355 (1856). State v. Irvin Jefferson Wilson, 91-MO-45 (S.C. March 4, 1991).
 
 
 36
 On May 7, 1991, Wilson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 alleging, among other things, that his second degree burglary conviction violated his Fifth Amendment right to be indicted before trial and his Fourteenth Amendment right to due process. The district court referred the case to a United States Magistrate Judge for a report and recommendation. In his report and recommendation, the magistrate judge recommended to dismiss the petition on the grounds that no constitutional deprivation occurred, citing Ashford v. Edwards, 780 F.2d 405 (4th Cir.1985).
 
 
 37
 After Wilson filed timely objections to the magistrate judge's report and recommendation, the district court granted Wilson a writ of habeas corpus, conditioned on the State's decision to retry Wilson or appeal to this court. In its order, the district court initially noted that the indictment charged Wilson with a violation of § 16-11-312(A), second degree burglary of a dwelling. The district court then concluded that because the jury was also instructed on the elements of § 16-11-312(B), second degree burglary of a building, which differed from those of second degree burglary of a dwelling, the indictment had not informed Wilson that he was also required to defend against the charge of second degree burglary of a building in violation of his "Fifth Amendment right not to be held to answer for an infamous crime for which he was not indicted and his Sixth Amendment right to be informed of the nature and cause of the accusation against him." J.A. at 170.
 
 
 38
 The State noted a timely appeal.
 
 II
 
 39
 The thrust of Wilson's argument is that the trial court's instructions constructively amended the indictment and allowed the jury to convict him of a crime not alleged in the indictment in violation of his constitutional rights. As previously noted, the indictment in this case charged Wilson specifically with a violation of South Carolina Code Ann. § 16-11-312(A), second degree burglary of a dwelling.[4] In addition, Wilson was neither charged with any of the other burglary in the second degree alternatives contained in South Carolina Code Ann. § 16-11-312, including the burglary of a building, nor with a general violation of § 16-11-312, i.e., without reference to a subsection of that section.
 
 
 40
 We begin our discussion by recognizing that deficiencies in state court indictments "are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." Ashford, 780 F.2d at 407. We believe that the constructive amendment of the indictment that occurred in Wilson's state court trial amounted to a deprivation of Wilson's due process rights.
 
 
 41
 A safely guarded embodiment of the Sixth Amendment[5] and Fourteenth Amendment right to due process is the right of a criminal defendant to have notice of the charges pending against him. Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948) ("No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal."). A constructive amendment, sometimes referred to as a fatal variance, denies a criminal defendant this fundamental guarantee. See e.g., Hunter v. State of New Mexico, 916 F.2d 595, 598-60 (10th Cir.1990), cert. denied, 111 S.Ct. 1693 (1991).[6]
 
 
 42
 An unconstitutional amendment of the indictment occurs when the charging terms are altered, either literally or constructively, such as when the trial judge instructs the jury. United States v. Helmsley, 941 F.2d 71, 89 (2d Cir.), cert. denied, --- U.S. ----, 112 S.Ct. 1162, 117 L.Ed.2d 409 (1991). In contrast, a variance occurs when the charging terms are unaltered, but the evidence offered at trial proves facts materially different from those alleged in the indictment. Id. It is important to note here the distinction between a constructive amendment of the indictment which is per se reversible error and a variance between the indictment and proof, which does not compel reversal of the conviction if the variance is harmless. Id.
 
 
 43
 The classic example of a constructive amendment case is Stirone. In Stirone, the grand jury indicted Stirone on a charge of obstructing shipments of sand into Pennsylvania by means of extortion in violation of the Hobbs Act. However, the government also introduced evidence that the defendant had obstructed the export of steel out of Pennsylvania through extortion. In its charge, the trial court instructed the jury that it could convict Stirone if it found that he had obstructed shipments of sand into Pennsylvania or obstructed shipments of steel out of Pennsylvania through extortion. The Supreme Court reversed Stirone's conviction, concluding that the jury might have convicted Stirone of using extortion to obstruct steel exports out of Pennsylvania, a separate offense not alleged in the indictment. Stirone, 361 U.S. at 217-19, 80 S.Ct. at 273-74.
 
 
 44
 A classic example of a variance case is Moore v. United States, 512 F.2d 1255 (4th Cir.1975). In Moore, the defendant was charged with possessing a firearm, namely a sawed-off shotgun, in violation of 26 U.S.C. § 5861(d). The government's proof at trial was different from that alleged in the indictment--the firearm proved not to be a shotgun, but rather a " 'firearm made by inserting a 11 inch piece of galvanized pipe into barrel of flare gun and welding the same with solder.... [sic]' " Id. at 1256. Thus, the essential elements of the crime of possessing a firearm under 26 U.S.C. § 5861(d) remained the same, but the facts introduced at trial materially differed from those alleged in the indictment. Employing variance analysis, we upheld the conviction on the basis of the defendant's failure to demonstrate prejudice from the variance. Id.
 
 
 45
 In the present case, the State's proof at trial and the trial court's instructions unquestionably effectuated a constructive amendment of the indictment. It is clear from examining the statute at issue that the elements of burglary of a "dwelling" and burglary of a "building" are materially different. Because Wilson was charged only with the burglary of a dwelling and not the burglary of a building, the State was not entitled to offer proof of this separate offense, nor was the trial court at liberty to instruct the jury on the elements of that separate offense. Thus, to prevent a profound deprivation of Wilson's due process rights Wilson's conviction on the burglary count must be reversed.
 
 III
 
 46
 From the extended colloquy between counsel for the State, Wilson's trial counsel, and the trial court set out supra, it is evident that Wilson's trial counsel acquiesced, if not in fact requested, the instruction tendered by the trial court. We are left with the question, which we raise sua sponte, whether the "invited error" doctrine requires vacation of the district court's conditional grant of the writ of habeas corpus. The "invited error" doctrine is "a branch of the doctrine of waiver by which courts prevent a party from inducing an erroneous ruling and later seeking to profit from the legal consequences of having the ruling set aside." Fryman v. Federal Crop Ins. Corp., 936 F.2d 244, 249 (6th Cir.1991) (citation and internal quotes omitted). Thus, courts apply the doctrine to prevent a party from complaining about an error caused by that party. United States v. Lopez-Escobar, 920 F.2d 1241, 1246 (5th Cir.1991); Guam v. Alvarez, 763 F.2d 1036, 1038 (9th Cir.1985).
 
 
 47
 However, the doctrine is not without exception. A court is required to reverse a conviction, despite the "invited error" in "exceptional circumstances." United States v. Schaff, 948 F.2d 501, 506 (9th Cir.1991). To demonstrate exceptional circumstances, the party inviting the error must demonstrate that reversal "is necessary to preserve the integrity of the judicial process or to prevent a miscarriage of justice." Alvarez, 763 F.2d at 1038 (citing Marshall v. United States, 409 F.2d 925, 927 (9th Cir.1969)). We find no compelling reason not to find that a conviction engendered through a constructive amendment of an indictment--which is a clear violation of one of the most safeguarded rights embodied in the Sixth and Fourteenth Amendments--would result in a miscarriage of justice. Accordingly, the "invited error" doctrine does not compel us to reverse the district court's conditional grant of the writ of habeas corpus.[7]
 
 IV
 
 48
 To sum up, we agree with the district court that the State's proof at trial and the trial court's instructions constructively amended the indictment. We also conclude that the invited error doctrine does not require reversal of the district court's conditional grant of a writ of habeas corpus. Accordingly, the district court's decision, conditionally granting a writ of habeas corpus, is affirmed.
 
 
 49
 AFFIRMED.
 
 WIDENER, Circuit Judge, dissenting:
 
 50
 I respectfully dissent. On the facts of this case, I believe there is no substance to the claim that Wilson lacked notice of the "nature and cause" of the charges against him, U.S. Const. Amend. VI, and therefore I would find no constitutional error. In addition, even if error was committed, the error was invited and it also was not prejudicial under previous circuit precedent. For those reasons, I would reverse the district court's grant of the writ.[1]
 
 
 51
 * To set this case properly,[2] I should say at the outset that the district court's opinion, with reference to lack of notice, is expressly based on the fact that the State proceeded "without informing him of the nature of the accusations against him until the end of trial." That is the latest time at which notice could be found consistent with a lack of it, and is, of course, a mistake, as the majority implicitly recognizes. What the district court would have held had it correctly analyzed the case, we will never know. The notice was at least measured in days and probably in weeks.
 
 
 52
 To underscore the fact that Wilson knew precisely what he was being tried for, I refer to the indictment, dated April 4, 1989, in which it is charged that he did "enter the dwelling of Ed Mekin."[3] Indeed, the record shows without dispute that Mekin knew the defendant Wilson, so it is only fair to assume that Wilson also knew Mekin. Thus, from the time he saw the indictment, Wilson knew exactly the place he was charged with burglarizing, his acquaintance Ed Mekin's house, whether the same, under South Carolina law, be a dwelling or a building. And the record shows, also without dispute, as everyone connected with the trial knew, that the house had been partially burned.
 
 
 53
 Some three weeks later, when the trial took up on April 25, 1989, and before any of the case had been presented to the jury, the question with respect to dwelling or building of the partially burned house, or both, was raised. The Solicitor took the position that the partially burned house could be a dwelling or a building, or both. At that time, the court indicated that it would cooperate with the defendant in keeping his prior offenses "away from the jury" and suggested that the prior offenses be stipulated, and a special question be sent in to the jury to ascertain whether Wilson had burglarized a dwelling or a building. Although the Solicitor agreed to keeping the prior convictions away from the jury, the defendant would not agree. The Solicitor then introduced the two previous convictions of the defendant Wilson, at which time Wilson's attorney interjected and stated into the record "If I may, without objection, Your Honor." (A. 7-9).
 
 
 54
 On April 26th, the question with reference to a dwelling or building again came up. The defendant rejected the court's offer to charge with respect to a dwelling only, and the following colloquy took place:
 
 
 55
 The Court: And you're not going to argue the fact that it is not a dwelling, so--
 
 
 56
 Mr. Walsh:[4] No, sir. I would believe--I would believe that the proper charge would be a building with the enhancement. In other words, we would have burglary in the second degree two ways. Either a dwelling or building with enhancement. The State has elected by introducing the prior convictions to go with a building and enhancement.
 
 
 57
 The Court: No, I don't think--
 
 
 58
 Solicitor: I'm going both ways. I mean--
 
 
 59
 The Court: Do you want to go both ways, Mr. Walsh?
 
 
 60
 Mr. Walsh: Your Honor, I prefer to go only on the--I prefer, obviously, to go neither way, but I believe the State has elected to go under building with enhancement.
 
 
 61
 So it is true, without a doubt, that from the time Wilson had knowledge of the indictment, he knew he was charged with breaking into the house of his acquaintance Ed Mekin. Wilson probably knew about the indictment very shortly after it was found by the grand jury, and in all events, he knew about it before the trial started on April 25th.[5] On April 25th, he was advised specifically that the State wanted to prove its case either way, that is to say, either that Ed Mekin's house was a dwelling or that it was a building. He also knew that both the trial judge and the Solicitor were willing to keep away from the jury the fact of his previous convictions, but he would have none of that, choosing, instead, to solicit the proof of the convictions even to the jury, which shows beyond doubt, I submit, as a matter of fact, that he was fully advised as to the nature of the charge and, as well, invited the error now complained of.
 
 II.
 
 62
 In 1884 the Supreme Court decided Hurtado v. California, 110 U.S. 516, 534-35, 4 S.Ct. 111, 120-21, 28 L.Ed. 232 (1884), not mentioned by the district court, in which the Court held that the due process clause of the Fourteenth Amendment did not incorporate the Fifth Amendment's right to be charged by grand jury indictment. The Court has never waivered from that view. See 2 LaFave & Israel, Criminal Procedure § 15.1 (1984). However, citing a string of cases that involved federal crimes and trials, the majority has decided that Wilson's indictment was amended improperly and he is entitled to federal habeas corpus relief. Although the Sixth Amendment has been used to help describe what must be contained in an indictment when the Fifth Amendment requires one to issue, the federal cases involving indictments are of little value when evaluating the sufficiency, under the Sixth Amendment alone, of a state accusatory pleading.[6] The Sixth Amendment does not apply to the States the same criteria that are used to judge a federal indictment based on both the Fifth and Sixth Amendments. Rather, the Sixth Amendment's "nature and cause" clause, coupled with the Fourteenth Amendment's due process clause, provides that state defendants must be given "notice and an opportunity to respond. Notice must be sufficient to make the opportunity useful." Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir.1992). The Seventh Circuit has determined that a Sixth Amendment claim such as the petitioner's is "a straight due process case in which the accused contends that inadequate notice led to a trial with an unacceptable risk of convicting the innocent." Fawcett, 962 F.2d at 618. I agree with Fawcett that such are straight due process cases and that our concern is the sufficiency of the notice that Wilson received of the charges against him. See also Ashford v. Evans, 780 F.2d 405, 407 (4th Cir.1985) ("[D]eficiencies in state court indictments are not ordinarily a basis of federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process.") In this case, to repeat, Wilson had notice at least before the jury was sworn, and almost certainly weeks before. Time and again the theory surfaced in the case, along with evidence to support it. There was no ambush or surprise here. At the end of trial, the trial court even offered to remove the burglary of a building theory from the case but it stayed in because the defendant asked for it. That aside, the majority has not yet explained how Wilson lacked notice. Therefore, I do not believe there was any Sixth Amendment notice error here, and Wilson's trial complied with the Fourteenth Amendment's due process notice requirements.
 
 III.
 
 63
 Even if Wilson's claim of error is correct, the majority holds that if a defendant agrees to the State's error, if the error is serious enough, we will vacate the conviction anyway. I neither accept the majority's proposition that the invited error doctrine should be ignored, nor agree that, even if an exceptional circumstances doctrine exists, it has any applicability in this case.
 
 A.
 
 64
 I agree with the majority's discussion of the invited error doctrine to the extent that it discusses the purposes of the doctrine. The doctrine has long been accepted in this Circuit. See, e.g., Cranston Print Works Co. v. Public Serv. Co. of N.C., 291 F.2d 638, 649 (4th Cir.1961) ("A party cannot successfully complain of error for which he, himself, is responsible or of rulings which he has invited the trial court to make."). However, I do not agree that an exceptional circumstances exception exists. Certainly it has never existed in this circuit before today, and apparently is extant only in the Ninth Circuit. Although theologians may argue about whether some sins are worse than others, so far as a habeas petitioner is concerned when a constitutional error has been invited, all such errors that furnish an avenue for relief are equal. Section 2254(a), which covers violations of the Constitution or laws or treaties of the United States, is a broad enough umbrella without extension by us. So, ordinarily, invited error is invited error, and this is an ordinary case. What the majority has done is to create a way around the exhaustion and similar procedural bar requirements for habeas corpus petitioners who fail to plead ineffective assistance of counsel but have preserved the merits of their claimed error. In my opinion, if the error is the result of poor lawyering, the petitioner must plead just that. We should not fill in the gap, as the majority does here, by simply repeating without factual support or explanation the writ is issued to "preserve the integrity of the judicial process or to prevent a miscarriage of justice." There has never been a habeas petitioner, from misdemeanant to capital murderer, who could not rationalize his case to fit that broad exculpatory grant.
 
 
 65
 Further, if the defendant had pleaded ineffective assistance of counsel, we might have discovered that counsel had an objectively reasonable purpose for asking for the instruction despite the Solicitor's and the trial court's willingness to dispense with it.[7] See Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). In all events, if the invited error doctrine means anything, it means that one of those reasons cannot be that the defendant wanted to invite reversible error. If counsel's conduct was not objectively reasonable, then ineffective assistance of counsel (had it been pleaded), should be the basis for issuing the writ.[8] By not applying the invited error doctrine and excusing the defendant's failure to plead ineffective assistance of counsel, the majority has seen to it that the defendant has achieved just what the invited error doctrine prohibits.
 
 B.
 
 66
 I note that even if the majority's exceptional circumstances exception to the invited error doctrine does exist, it has no application in this case. If such an exception exists, surely we must weigh the inviting conduct against the error, however grave. Here, before the jury was impaneled, the solicitor, defense counsel, and the court discussed the question and the court suggested that the two prior convictions be stipulated so the jury would not have the convictions before it. Other than any question of identity, the only questions before the jury would have been whether Mekin's house was a dwelling or a building and whether there was a breaking or entering, either or both under the statutes. The solicitor explained that he might proceed under either theory. Rather than objecting, defense counsel asked for a moment to decide whether he would stipulate to the convictions. The solicitor then informed the court that there had not been a stipulation and that the two prior convictions would be introduced. Defense counsel did not object when the solicitor informed the court. When the convictions were introduced, defense counsel explicitly interjected and stated that he had no objection to their introduction. Then, when discussing the jury charges with the trial court, rather than accepting the solicitor's offer to withdraw the building charge, and in the face of the court's expressed willingness to keep out the prior convictions, defense counsel stated that "the proper charge would be a building with the enhancement.... The State has elected by introducing the prior convictions to go with a building and enhancement." Defense counsel did not object when the jury was charged with both theories.
 
 
 67
 Wilson's lawyer had more than one perfect opportunity to object to the injection of the burglary of a building theory into the case. However, he did not object. Further, if the court had followed his wishes in the instruction conference, the only theory on which the jury would have been charged was burglary of a building. In light of the numerous times that defense counsel encouraged the burglary of a building theory, I cannot agree that there can be any exception to the invited error doctrine in this case.
 
 
 68
 I also note that in each of the three exceptional circumstances cases cited by the majority,[9] the Ninth Circuit did not find such circumstances. The exceptional circumstances doctrine in the Ninth Circuit is invoked only when it is necessary to "preserve the 'integrity of the judicial process' or to prevent a 'miscarriage of justice.' " Guam v. Alvarez, 763 F.2d 1036, 1038 (9th Cir.1985) (per curiam) (quoting Marshall v. United States, 409 F.2d 925, 927 (9th Cir.1969)). I do not think that they are present here for two reasons in addition to the one I have stated above. First, it would be a misstatement to say that Wilson did not have a fair hearing. Every procedural opportunity was extended to him, so the integrity of the judicial process was preserved. Second, there is no reason that the words miscarriage of justice should be taken to have any different meaning than as they have been defined by the Court in Sawyer v. Whitley, --- U.S. ----, ----, ----, 112 S.Ct. 2514, 2517, 2518-20, 120 L.Ed.2d 269 (1992) as being " 'actually innocent' of the crime of which he was convicted." Cf. Fawcett v. Bablitch, 962 F.2d 617, 618 (7th Cir.1992) (stating that concern is the "unacceptable risk of convicting the innocent"). There is no such claim of innocence here, and such a claim would be idle.
 
 IV.
 
 69
 In Ashford we reasoned that "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis for federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process." 780 F.2d at 407. We then held that since the defendant had not been prejudiced in his defense by any variances between the indictment and proof, that he had not been prejudiced, and we declined to require the district court to issue a writ of habeas corpus. In this case, as in Ashford, not even the majority can point to any prejudice to Wilson by the charge to the jury. Wilson points to no defense he could have made, had the jury been charged merely with breaking into a dwelling or with breaking into a building, that he did not make here.
 
 It follows that I would reverse.ORDER
 
 70
 Aug. 2, 1993.
 
 
 71
 Upon a request for a poll of the court, a majority of the active circuit judges voted to rehear this case by the en banc court.
 
 
 72
 It is accordingly ADJUDGED and ORDERED that the decision of the panel in this case, decided June 11, 1993, shall be, and the same hereby is, vacated.
 
 
 73
 It is FURTHER ORDERED that the clerk will see that this case is heard by the en banc court in the ordinary course of business.
 
 
 74
 With the concurrences of all the active circuit judges.
 
 
 75
 IT IS FURTHER ORDERED that this case shall be calendared for argument at the October session of Court. Within ten days of the date of this order, 12 additional copies of appellant's brief; 15 additional copies of appellee's brief; 12 additional copies of appellant's cross reply brief; and 15 copies of appellee's cross reply brief, shall be filed.
 
 
 76
 The appellant will file 14 additional copies of the joint appendix.
 
 
 
 [1]
 Wilson was also charged with petit larceny
 
 
 [2]
 A conviction under § 16-11-312(B) requires establishing two prior convictions for burglary or housebreaking or a combination of both. Without objection, the State introduced Wilson's two prior convictions for burglary
 
 
 [3]
 Wilson was also convicted of petit larceny
 
 
 [4]
 S.C.Code Ann. § 16-11-312 provides:
 Burglary; second degree.
 (A) A person is guilty of burglary in the second degree if the person enters a dwelling without consent and with intent to commit a crime there.
 (B) A person is guilty of burglary in the second degree if the person enters a building without consent and with the intent to commit a crime therein, and either:
 (1) When, in effecting entry or while in the building or in the building or in immediate flight therefrom, he or another participant in the crime:
 (a) Is armed with a deadly weapon or explosive; or
 (b) Causes physical injury to any person who is not a participant in the crime; or
 (c) Uses or threatens the use of a dangerous instrument; or
 (d) Displays what is or appears to be a knife, pistol, revolver, rifle, shotgun, machine gun, or other firearm; or
 (2) The burglary is committed by a person with a prior record of two or more convictions for burglary or housebreaking or a combination of both; or
 (3) The entering or remaining occurs in the nighttime.
 (C) Burglary in the second degree is a felony punishable by imprisonment for not more than fifteen years, provided, that no person convicted of burglary in the second degree shall be eligible for parole except upon service of not less than one-third of the term of the sentence.
 5 U.S. CONST. amend. VI provides:
 In all criminal prosecutions, the accused shall enjoy the right ... to be informed of the nature and cause of the accusation.
 
 
 [6]
 In federal criminal cases, constructive amendments to indictments also run afoul of the Fifth Amendment right to be indicted by a grand jury. See Stirone v. United States, 361 U.S. 212, 215-17, 80 S.Ct. 270, 272-73, 4 L.Ed.2d 252 (1960). Because this case concerns a state criminal prosecution, this protection has no application here. See Hurtado v. California, 110 U.S. 516, 534-35, 4 S.Ct. 111, 120-21, 28 L.Ed. 232 (1884) (due process clause of the Fourteenth Amendment does not incorporate Fifth Amendment right to be charged by a grand jury indictment). We note, however, that S.C. CONST. art. I, § 11 provides: "No person may be held to answer for any crime the jurisdiction over which is not within the magistrate's court, unless on a presentment or indictment of a grand jury of the county where the crime has been committed, except in cases arising in the land or naval forces or in the militia when in actual service in time of war or public danger." This right to be charged by an indictment is also codified in S.C.Code Ann. § 17-19-10. The Supreme Court of South Carolina has held that "[a] defendant in a criminal case is entitled to be tried on the charges set forth in the indictment." Munn, 357 S.E.2d at 462. In light of our decision, we need not decide if these provisions in fact create some type of liberty interest entitled to protection
 
 
 [7]
 The dissent infra at 1266 would confine the definition of "miscarriage of justice" employed in invited error cases to the definition employed by the Supreme Court in cases involving procedural default. We are reluctant to employ such a narrow standard in this case because the error was fully preserved and not defaulted. In no way does our decision here alter the preclusive effect of the "miscarriage of justice" exception ("actual innocence" exception) applied to procedurally defaulted claims
 
 
 [1]
 The district court erroneously based its grant of the writ on the Fifth Amendment right to an indictment. Although the district court mentioned the Sixth Amendment, it stated that the Sixth Amendment is a "criteria against which the sufficiency of an indictment must be measured."
 
 
 [2]
 The quoted colloquy in the majority opinion, p. 1258-60 took place on April 26th, the second day of trial. Omitted is any detail of the colloquy on April 25th, the first day of trial to which I will refer
 
 
 [3]
 Mekin may be spelled Meekins
 
 
 [4]
 The defendant's attorney
 
 
 [5]
 The record does not show exactly when Wilson learned of his indictment, but it is bound to have been early in the game since he was caught red-handed
 
 
 [6]
 The Tenth Circuit case on which the majority relies, Hunter v. New Mexico, 916 F.2d 595 (10th Cir.1990) (per curiam), cert. denied, --- U.S. ----, 111 S.Ct. 1693, 114 L.Ed.2d 87 (1991), fails to make the distinction between the Fifth and Sixth Amendment requirements in state cases. Although the court acknowledged the distinction in a footnote, see Hunter, 916 F.2d at 598 n. 5, it made the same error in reasoning the majority has made here: the opinion cites and quotes federal Fifth Amendment cases to find error. Such a procedure ignores the very reason why constructive amendment of an indictment violates the Fifth Amendment--that the charge has not been passed on by the grand jury as the Fifth Amendment requires. 2 LaFave & Israel, supra § 19.2, at 450 (quoting and citing Russell v. United States, 369 U.S. 749, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). I also note that the Supreme Court cases on which the majority has relied, all concerned much different factual situations, and indeed, did not even deal with the question before us at all. For example, although the majority has accurately quoted certain language from Cole v. Arkansas, 333 U.S. 196, 68 S.Ct. 514, 92 L.Ed. 644 (1948), Cole does not end the inquiry, and the quoted material cannot be read as establishing a bright-line reversible per se rule for Sixth Amendment violations. In Cole, the defendant had been tried and convicted of § 2 of an Arkansas statute. The Arkansas Supreme Court had mistakenly considered the conviction as under § 1 of the same statute. § 1 and § 2 required entirely different elements to convict, so the U.S. Supreme Court not surprisingly required reconsideration by the Arkansas Court, in which setting the quotation in the majority opinion arose
 
 
 [7]
 The record in this case discloses abundant evidence that Wilson was guilty of both dwelling breaking and building breaking, with the same sentence authorized for each crime. Wilson's previous convictions were committed in years past, so they enter into the case only as incidental proof of the charge of building breaking. Whether building or dwelling breaking was the charge, it really was a matter of technical indifference to the attorney, so far as this proceeding is concerned. In view of the fact that at common law burglary is particularly heinous as a crime against habitation, I suggest that the defense attorney was actually, like Brer Rabbit, about to be thrown in the briar patch. Indeed, the common law notion that burglary of a dwelling is more heinous than breaking into a building not a dwelling still is reflected in the South Carolina statutory scheme, which requires that there be the aggravating factor of two prior convictions before breaking into a building can be second degree burglary. S.C.Code Ann. § 16-11-312(B) (Law.Co-op.Supp.1992). Without the prior convictions, burglary of a building is burglary in the third degree, which carries a lower penalty. See S.C.Code Ann. § 16-11-313 (Law.Co-op.Supp.1992)
 
 
 [8]
 This procedure was followed in Ricalday v. Procunier, 736 F.2d 203 (5th Cir.1984). Although harmless error was found, the basis for relief was the petitioner's Sixth Amendment right to the effective assistance of counsel. See also Thomas v. Harrelson, 942 F.2d 1530 (11th Cir.1991), in which case relief was granted
 
 
 [9]
 The third is United States v. Schaff, 948 F.2d 501 (9th Cir.1991). I particularly note that each of those three cases is a direct criminal appeal. In such case, the additional hurdles for habeas corpus relief are not present