Donald Raymond BARBE, Petitioner,

v.

Thomas McBRIDE, Warden, Respondent.

Civil Action No. 2:07 CV 25.

United States District Court, N.D. West Virginia.

Sept. 15, 2010.

V. Tad Greene, Jackson Kelly, PLLC, Wheeling, WV, William J. Watkins, Jr., Womble, Carlyle, Sandridge & Rice, PLLC, Greenville, SC, for Petitioner.

Dawn E. Warfield, Robert D. Goldberg, Attorney General's Office, Charleston, WV, for Respondent.

## ORDER ADOPTING REPORT AND RECOMMENDATION

JOHN PRESTON BAILEY, District Judge.

The above-styled civil action was instituted on March 19, 2007, when the petitioner, Donald Raymond Barbe, who was, at that time [1], proceeding *pro se*, filed a Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus*. This civil action was referred to United States Magistrate Judge James E. Seibert for initial review and report and recommendation, pursuant to Rule 83.13 of the Local Rules of Prisoner Litigation Procedure.

The docket herein reflects that, by Order entered May 29, 2008, 2008 WL 2225840, the Court denied and dismissed with prejudice as successive the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* and Ordered the above-styled civil action stricken from the docket of this Court. The petitioner appealed the dismissal of his § 2254 Petition to the United States Court of Appeals for the Fourth Circuit by Notice of Appeal filed June 25, 2008, and, in a June 22, 2009, 335 Fed.Appx. 332 (4th Cir.2009), unpublished *per curiam* opinion, the United States Court of Appeals for the Fourth Circuit vacated this Court's May 29, 2008, Order dismissing the petitioner's § 2254 Petition and remanded this matter for further proceedings. Accordingly, this matter was re-referred to United States Mag-

---

1. Attorney V. Tad Greene, who now represents the petitioner, did not file a Notice of Appearance herein until May 27, 2008 (Doc. 6).

istrate Judge James E. Seibert by Order entered December 22, 2009.

By Order entered December 29, 2009, Magistrate Judge Seibert directed the respondent to show cause why the petitioner's § 2254 Petition should not be granted. In compliance with Magistrate Judge Seibert's December 29, 2009, Order, the Respondent's Motion for Partial Summary Judgment and Memorandum in Support thereof were filed on January 27, 2010. The Petitioner's Response to Respondent's Motion for Partial Summary Judgment was filed on February 26, 2010.

By Order entered March 26, 2010, Magistrate Judge Seibert indicated that he found the respondent's Motion for Partial Summary Judgment unresponsive to the petitioner's second ground for relief, *i.e.,* that his due process rights were violated when the state court, in its jury instructions, impermissibly broadened the offenses charged in Counts Ten and Eleven of the Indictment. Accordingly, Magistrate Judge Seibert's March 26, 2010, Order gave the respondent twenty-one days in which to file a supplemental response to the petitioner's § 2254 Petition and to specifically address therein the petitioner's second ground for relief.

The Respondent's Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment was filed on April 16, 2010. The Petitioner's Response to Respondent's Supplemental Memorandum of Law in Supprot [*sic* ] of Motion for Partial Summary Judgment was filed on June 7, 2010.

By Report and Recommendation entered July 29, 2010, Magistrate Judge Seibert recommended that the petitioner's § 2254 Petition be granted with regard to his contention that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va.Code § 61–8B–4 on Counts Ten and Eleven of the Indictment; that this civil action be remanded to the state court for re-sentencing on Counts Ten and Eleven of the Indictment; and that the respondent's Motion for Partial Summary Judgment be granted with regard to the petitioner's contention that his due process rights were violated as to Counts Ten and Eleven of the Indictment when the state court instructed the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment.

Magistrate Judge Seibert's Report and Recommendation ("R & R") expressly advised the parties, in accordance with 28 U.S.C. § 636(b)(1), to file with the Clerk of Court any written objections to the Report and Recommendation within fourteen days after being served with a copy of the same. The Report and Recommendation further advised the parties that a failure to timely file objections thereto would result in waiver of the right to appeal from a judgment of this Court based thereon. The Petitioner's Objections to Report and Recommandations [*sic* ] were filed on August 30, 2010 [2].

Pursuant to 28 U.S.C. § 636(b)(1)(c), this Court is required to make a *de novo* review of those portions of Magistrate Judge Seibert's findings to which objection is made. However, the Court is not required to review, under a *de novo* or any other standard, the factual or legal conclusions of Magistrate Judge Seibert as to those portions of the findings or recommendation to which no objections are addressed. *Thomas v. Arn,* 474 U.S. 140,

**2.** The petitioner filed a Motion for Extension of Time to File Objections on August 10, 2010, and this Motion was granted by a paperless Order entered by this Court on August 11, 2010. Pursuant to the Court's August 11, 2010, Order, the petitioner was given until August 31, 2010, in which to file objections to Magistrate Judge Seibert's Report and Recommendation.

150, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985). In addition, failure to file timely objections constitutes a waiver of *de novo* review and the petitioner's right to appeal this Court's Order. 28 U.S.C. § 636(b)(1); *Snyder v. Ridenour*, 889 F.2d 1363, 1366 (4th Cir. 1989); *United States v. Schronce*, 727 F.2d 91, 94 (4th Cir.1984). As previously noted, the petitioner timely filed his Objections to Report and Recommandations [sic] on August 30, 2010. This Court has conducted a *de novo* review only as to the portions of the R & R to which the petitioner objected. The remaining portions of the R & R to which the petitioner did not object were reviewed for clear error.

As noted by Magistrate Judge Seibert in his R & R, in his § 2254 Petition, the petitioner challenges Counts Ten and Eleven of the Indictment in the underlying state court action on two grounds, first, that his *ex post facto* rights were violated when the sentencing court sentenced him under the 1991 version of West Virginia Code § 61–8B–4; and, second, that his due process rights were violated when the state court impermissibly broadened the offenses charged in Counts Ten and Eleven of the Indictment by instructing the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment.

## I. The Petitioner's *Ex Post Facto* Rights Were Violated When the Sentencing Court Sentenced Him Under the 1991 Version of West Virginia Code § 61–8B–4

The petitioner argues that his *ex post facto* rights were violated when the sentencing court sentenced him on counts Ten and Eleven of the Indictment using the 1991 version of West Virginia Code § 61–8B–4, when the evidence adduced at trial proved that the two incidents charged in those counts occurred in 1989 or 1990. The 1991 version of West Virginia Code § 61–8B–4 increased the maximum sen-

tence for a conviction of Sexual Abuse in the Second Degree from twenty years to twenty-five years.

As noted by Magistrate Judge Seibert in his R & R, the respondent concedes in his Memorandum of Law in Support of Motion for Partial Summary Judgment that the sentences imposed on the petitioner with regard to Counts Ten and Eleven of the Indictment did violate the *Ex Post Facto* clause of the United States Constitution. (Doc. 30 at 13). In his R & R, Magistrate Judge Seibert agreed with the respondent and recommended that the petitioner's § 2254 Petition be granted with regard to the petitioner's contention that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va.Code § 61–8B–4 on Counts Ten and Eleven of the Indictment and that this civil action be remanded to the state court for re-sentencing. The petitioner has not objected to this recommendation of the Magistrate Judge, and this Court, agreeing with both parties and Magistrate Judge Seibert that the petitioner's *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va.Code § 61–8B–4 on Counts Ten and Eleven of the Indictment, hereby **ADOPTS** Magistrate Judge Seibert's R & R with regard to this issue without any further discussion. The Court will also issue a writ of *habeas corpus*, vacate the sentences imposed on the petitioner with regard to Counts Ten and Eleven of the Indictment, and remand this issue to the state court for re-sentencing.

## II. The Petitioner's Due Process Rights Were Not Violated When the State Court Instructed the Jury on "Sexual Intrusion" Rather Than "Sexual Intercourse" as Charged in Counts Ten and Eleven of the Indictment

In his second ground for relief, the petitioner alleges that his due process rights

were violated when the state court impermissibly broadened the offenses charged in Counts Ten and Eleven of the Indictment by instructing the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment. Specifically, the petitioner the notes that the prosecution failed to produce proof of "sexual intercourse," and that it should have returned the Indictment to the grand jury to seek an amendment to Counts Ten and Eleven thereof. The petitioner contends, however, that what occurred, instead, was that the state court charged the jury on "sexual intrusion" and, thus, amended the charges that had been made in Counts Ten and Eleven of the Indictment. The petitioner argues that the state court's action in this regard constituted a constructive amendment of the charges set forth in Counts Ten and Eleven of the Indictment which is violative of the ruling of the United States Supreme Court in *Stirone v. United States,* 361 U.S. 212, 215–216, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960), wherein the Court held that a constructive amendment to an Indictment violated a defendant's Fifth Amendment right under the grand jury clause.

In its Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment, the respondent argues first that the petitioner's *Stirone* claim was unexhausted since neither the petitioner's state *habeas* petition nor his *habeas* appeal to the West Virginia Supreme Court of Appeals mentioned the *Stirone* case or alleged that the State had improperly broadened the scope of his Indictment. In this regard, the respondent contends that the petitioner did not raise his *Stirone* claim until his Response to Respondent's Motion for Partial Summary Judgment.

The second argument made by the respondent in its Supplemental Memorandum of Law in Support of Motion for

Partial Summary Judgment is that, even were the Court to find that the petitioner did exhaust his *Stirone* claim in state court, the claim would not be cognizable on *habeas* review pursuant to the United States Supreme Court's decision in *Hurtado v. California,* 110 U.S. 516, 534–35, 4 S.Ct. 111, 28 L.Ed. 232 (1884), wherein the Supreme Court held that the due process clause of the Fourteenth Amendment as applied to the states does not incorporate the Fifth Amendment right to be charged by grand jury Indictment.

In its third and final argument with regard to the petitioner's *Stirone* claim, the respondent asserts that, because West Virginia Code § 61–8B–4(a)(2) sets forth alternate ways of committing the same offense and not two separate offenses, the evidence of sexual intrusion constituted a mere variance and not a constructive amendment. In this regard, the respondent cites the opinion of the United States Court of Appeals for the Fourth Circuit in *United States v. Randall,* wherein the Court held that "[a] mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." 171 F.3d 195, 203 (1999). The respondent takes the position that, because the petitioner was charged with Second Degree Sexual Assault, which, by statute, can be proved by either sexual intercourse or sexual intrusion, there was no unfair surprise or disregard for the petitioner's rights.

In his Response to the Respondent's Supplemental Memorandum, the petitioner contends that his due process claim is exhausted; that he first raised that issue in his first state *habeas* petition to the West Virginia Supreme Court of Appeals; and that he raised that issue in this Court

several times before the filing of his Response to Respondent's Motion for Partial Summary Judgment. The petitioner further contends that, regardless of the state's constitutional requirements, in a federal *habeas corpus* action, a state court Indictment must satisfy federal due process requirements. Relying on the case of *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962), the petitioner asserts that, in order to satisfy federal due process requirements, a state court Indictment must contain the elements of the crime so as to permit the accused to plead and prepare an adequate defense and allow the disposition to be used as a bar in a subsequent prosecution, neither of which condition is met with the Indictment in this case. Finally, the petitioner asserts that broadening the charges in Counts Ten and Eleven from "sexual intercourse" to "sexual intrusion" was a constructive amendment to the charge and not a mere variance as suggested by the respondent. In this regard, the petitioner argues that the state court's instructions changed the material facts charged in the Indictment when the State was unable to present evidence of a material element of the offenses charged in Counts Ten and Eleven of the Indictment, namely, sexual intercourse.

In his R & R, Magistrate Judge Seibert found that the petitioner had exhausted his state court remedies with regard to his *Stirone* claim. The Magistrate Judge further found that, neither *Stirone* nor the Fifth Amendment right to a grand jury were applicable to this case. Additionally, Magistrate Judge Seibert found that the state court's charge of "sexual intrusion" rather than "sexual intercourse" as charged in Counts Ten and Eleven of the Indictment amounted to a variance rather than a constructive amendment. Finally, Magistrate Judge Seibert found that the variance in this case did not prejudice the petitioner. In this regard, the Magistrate Judge noted that the petitioner was aware that the charge against him was Second Degree Sexual Assault; that the statute governing Second Degree Sexual Assault clearly stated that such a charge could be proved by either a showing of sexual intercourse or sexual intrusion; and that the petitioner, accordingly, had reasonable notice that he could be proven guilty under either theory of the case. Finally, Magistrate Judge Seibert found that the petitioner was unable to show that his defense was hindered by the variance since his theory of the defense was that the alleged victim had fabricated the allegations, a theory which would not change regardless of whether he was specifically indicted for Second Degree Sexual Assault by means of sexual intercourse or sexual intrusion, and that petitioner was in no danger of being exposed to a second prosecution for the crime of Second Degree Sexual Assault with regard to the two incidents alleged in Counts Ten and Eleven of the Indictment.

In his Objections to Report And Recommandations [*sic*], the petitioner objects to various specific sentences from Magistrate Judge Seibert's R & R, which essentially amount to an objection to the entirety of the Magistrate Judge's Recommendation with regard to his *Stirone* claim, with the exception of the Magistrate Judge's determination that he had exhausted the claim on the state court level. In other words, the petitioner objects to the Magistrate Judge's conclusion that neither *Stirone* nor the Fifth Amendment right to a grand jury are applicable to this case; to the Magistrate Judge's determination that the state court's jury instructions regarding "sexual intrusion" rather than "sexual intercourse," as charged in Counts Ten and Eleven of the Indictment, amounted to a variance rather than a constructive amendment; and to the Magistrate Judge's con-

clusion that the variance in this case did not prejudice the petitioner.

Count Ten of the state court Indictment in question charged as follows:

> That sometime between 1988 and 1994 in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "Sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in sexual intercourse with B.H., a minor, a person known to the Grand Jury without that person's consent, and the lack of consent resulted from forcible compulsion, against the peace and dignity of the State and in violation of West Virginia Code § 61–8B–4(a)(2).

(Doc. 7, Ex. A at 5). Likewise, Count Eleven of the state court Indictment in question charged as follows:

> That sometime between 1989 and 1993 and separate from the incident alleged in Count Ten, in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in sexual intercourse with B.H., a person known to the Grand Jury without that person's consent, and the lack of consent resulted from forcible compulsion, against the peace and dignity of the State and in violation of West Virginia Code § 61–8B–4(a)(2).

(Doc. 7, Ex. A at 6).

During the trial of the underlying criminal action, the alleged victim, B.H., testified to the following events:

> A. One time, he was taking me home after a 4–H event and he told—me I was sitting on the front seat with him in his vehicle, and he asked me to lay down or told me to lay down, one or the other. I laid down and had my head in his lap, and, he put his hand down the front of my pants and started massaging my vagina, and—
>
> Q. So—
>
> A. —he would say, "Isn't that more comfortable?"
>
> Q. Did you try to move away from that position?
>
> A. In another instance yes. He laid me down in that same position, but I tried to get back up, and he just pushed me back down with his arm and kept my body laid down flat.
>
> Q. Now, on this other occasion you are speaking of, what did Mr. Barbe do?
>
> A. He held my head down in his lap and put his hand down the front of my pants and massaged my vagina.
>
> Q. With his hand?
>
> A. With his hand.
>
> Q. And his fingers?
>
> A. Yes.
>
> Q. And what did his fingers do when they were massaging your vagina?
>
> A. He was moving his fingers around. I don't know exactly what you're asking me, I'm sorry.
>
> Q. During the time that he was—he had his hand down your pants—
>
> A. Uh-huh.
>
> Q. —and massaging your vagina, was there penetration to any degree of the outside area of your vagina?
>
> A. Yes.

(Doc. 7, Ex. V at 7–8).

In charging the jury with regard to Count Ten of the Indictment, the state court stated as follows:

> The offense charged in Count Ten of the Indictment in this case is sexual assault in the second degree. One of the two verdicts may be returned by you under this count of the Indictment. And they are guilty and not guilty.

Sexual assault in the second degree is committed when any person engages in sexual intrusion with another person without the consent of the other person and the lack of consent results from forcible compulsion.

Lack of consent results from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless.

Forcible compulsion means a physical force that overcomes such earnest resistance as might reasonable be expected under the circumstances, be it threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person, or in fear that he or another person will be kidnapped or seized, fear by a child under 16 years of age caused by intimidation, expressed or implied by another person four years older than the victim. For purposes of this definition, resistance includes physical resistance or any clear communication of the victim's lack of consent.

Before the defendant, Donald R. Barbe, can be convicted of sexual assault in the second degree, the State of West Virginia must overcome the presumption that the defendant, Donald R. Barbe, is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that the defendant, Donald R. Barbe, in Ohio County, West Virginia, between 1988 and 1994, did engage in sexual intrusion with another person, BH, without the consent of BH, which lack of consent results from forcible compulsion.

If, after impartially considering, weighing and comparing all of the evidence, both that of the State and that of the defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of sexual assault in the second degree, you may find Donald R. Barbe guilty of sexual assault in the second degree as charged in Count Ten of the Indictment.

If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of sexual assault in the second degree, you shall find the defendant, Donald R. Barbe, not guilty.

(Doc. 14 (5:04 CV 53), Ex. 8 at 604–606). The instructions given by the state court with regard to Count Eleven of the Indictment are substantially the same. (Doc. 14 (5:04 CV 53), Ex. 8 at 604–606).

### A. Neither *Stirone* Nor the Fifth Amendment Right to a Grand Jury are Applicable to this Case

■ As previously noted, the petitioner contends that, by instructing the jury on "sexual intrusion" rather than "sexual intercourse," as charged in Counts Ten and Eleven of the Indictment, the trial court constructively amended the Indictment and violated his Fifth Amendment right under the grand jury clause. In support of this argument, the petitioner relies on the case of *Stirone v. United States*, 361 U.S. 212, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960). In his R & R, Magistrate Judge Seibert recognized that, in the *Stirone* case, the Supreme Court did hold that a constructive .amendment to an Indictment violates a defendant's Fifth Amendment right under the grand jury clause, but found that, because the holding was clearly grounded in the Fifth Amendment's right to a grand jury, it did not apply to the states and was not, accordingly, applicable to the case now before the Court. This Court agrees.

In the *Stirone* case, the United States Supreme Court held that, once an Indict-

ment has been returned, its charge may not be broadened through amendment except by the grand jury itself. 361 U.S. at 215–16, 80 S.Ct. 270. Referencing the Supreme Court's holding in *Stirone*, the United States Court of Appeals for the Fourth Circuit has held that constructive amendments violate the grand jury clause of the Fifth Amendment to the United States Constitution and has stated as follows in this regard:

> The Fifth Amendment to the United States Constitution, which in relevant part provides: "No person shall be held to answer for a capitol, or otherwise infamous crime, unless on a presentment or Indictment of a Grand Jury ...," U.S. Const. amend. V., " 'guarantees that a criminal defendant will be tried only on charges in a grand jury Indictment.' " Therefore, only the grand jury may broaden or alter the charges in the Indictment. *See Stirone v. United States*, 361 U.S. 212, 215–216, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960).

*United States v. Randall*, 171 F.3d 195, 203 (4th Cir.1999).

■ As noted by Magistrate Judge Seibert in his R & R, however, the Fifth Amendment's grand jury clause has never been extended to the states. In this regard, the United States Supreme Court stated:

> Although the Due Process Clause guarantees petitioner a fair trial, it does not require the States to observe the Fifth Amendment's provision for presentment or Indictment by a grand jury. In *Duncan v. Louisiana*, 391 U.S. 145, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968), the Court held that because trial by jury in criminal cases under the Sixth Amendment is 'fundamental to the American scheme of justice,' *id.*, at 149, 88 S.Ct., at 1447, such a right was guaranteed to defendants in state courts by the Fourteenth Amendment, but the Court has never held that federal concepts of a 'grand jury,' binding on the federal courts under the Fifth Amendment, are obligatory for the States. *Hurtado v. California*, 110 U.S. 516, 538, 4 S.Ct. 111, 122, 28 L.Ed. 232 (1884).

*Alexander v. Louisiana*, 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972). Based on the clear holding of the Supreme Court in the *Alexander* case, Magistrate Judge Seibert was correct to conclude that neither the *Stirone* case nor the Fifth Amendment right to a grand jury are applicable in the matter before the Court and that, for that reason, the legality of any amendment to the state court Indictment in question is primarily a matter of state law. Claims based on errors of state law are not cognizable on federal *habeas* review. *Estelle v. McGuire*, 502 U.S. 62, 67–68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).

**B. The State Court's Jury Instructions Regarding "Sexual Intrusion" Rather than "Sexual Intercourse," as Charged in Counts Ten and Eleven of the Indictment, Amounted to a Variance Rather than a Constructive Amendment**

■ The petitioner contends that, by instructing the jury on "sexual intrusion" rather than "sexual intercourse," as charged in Counts Ten and Eleven of the Indictment, the state court constructively amended the charges set forth therein. Accordingly, in his Objections, the petitioner objects to Magistrate Judge Seibert's determination that the state court's jury instructions on "sexual intrusion" amounted to a mere variance, rather than a constructive amendment. This Court agrees with Magistrate Judge Seibert's conclusion.

Magistrate Judge Seibert concluded that the jury instructions given by the state

court comported with the language of West Virginia Code § 61–8B–4(a)(2), and this Court agrees. West Virginia Code § 61–8B–4(a), provides as follows:

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse or sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; or

(2) Such person engages in sexual intercourse or sexual intrusion with another person who is physically helpless.

The foregoing statute clearly provides two alternative ways to prove Second Degree Sexual Assault—by sexual intercourse or by sexual intrusion. When it instructed the jury on Counts Ten and Eleven of the Indictment, the state court instructed that the jury could find the petitioner guilty of Second Degree Sexual Assault if it found, beyond a reasonable doubt, that the petitioner had engaged in sexual intrusion with B.H., without her consent, and that the lack of consent resulted from forcible compulsion. The state court further instructed that lack of consent resulted "from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless." Finally, the state court instructed that forcible compulsion "means a physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances, be it threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person, or in fear that he or another person will be kidnapped or seized, fear by a child under 16 years of age caused by intimidation, expressed or implied by another person

four years older than the victim." (Doc. 14 (5:04 CV 53), Ex. 8 at 604–606). Thus, as Magistrate Judge Seibert found, the state court's instruction on "sexual intrusion" was consistent with what is required to prove Second Degree Sexual Assault in violation of West Virginia Code § 61–8B–4(a)(2). In his Objections, the petitioner points out that West Virginia Code § 61–8B–4(a)(2) requires that the sexual intrusion be with a person who is "physically helpless" and that the state court did not charge the jury with this requirement. This Court notes, however, that the state court did, in fact, instruct the jury that a lack of consent resulted "from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or *physically helpless.*" (Doc. 14 (5:04 CV 53), Ex. 8 at 604–606)(emphasis added).

After having reviewed the trial transcript, Magistrate Judge Seibert further concluded that B. H.'s trial testimony was sufficient to prove that a sexual intrusion had occurred by means of forcible compulsion, and, that, accordingly, the trial testimony supported a finding that the petitioner had committed the crime of Second Degree Sexual Assault. This Court agrees. During the underlying trial, the alleged victim, B.H., did not testify to sexual intercourse, but rather to the petitioner having "massaged" her vagina on two separate occasions. (Doc. 7, Ex. V at 7–8). B.H. specifically testified that, on one occasion, the petitioner's fingers had penetrated the outside area of her vagina. (Doc. 7, Ex. V at 7–8). B.H. further testified that, on the second occasion, she had "tried to get back up, and he just pushed me back down with his arm and kept my body laid down flat." (Doc. 7, Ex. V at 7–8). In his Objections, the petitioner asserts that B.H.

only testified to the petitioner's fingers having penetrated the outside area of her vagina on one occasion. Having heard the testimony of B. H., the jury convicted the petitioner of both Counts Ten and Eleven of the Indictment. It is somewhat unclear to this Court to which occasion B.H. was referring when she responded to the prosecution's question regarding whether the petitioner's fingers had ever penetrated the outside area of her vagina. The jury was present for B.H.'s testimony, however, and it found beyond a reasonable doubt that sufficient evidence existed to find the petitioner guilty on each of the two occasions addressed by Counts Ten and Eleven of the Indictment. This Court will not disturb the jury's finding of guilt. The United States Court of Appeals for the Fourth Circuit has stated as follows with regard to the limits placed on a federal court when reviewing claims of insufficient evidence from a state court proceeding:

> Though claims of insufficient evidence are cognizable on collateral review, a federal court's review of such claims is "sharply limited." *Wright v. West,* 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (plurality opinion); *see also Evans–Smith v. Taylor,* 19 F.3d 899, 905 (4th Cir.1994) ("The standard is obviously rigorous."). Federal review of the sufficiency of the evidence to support a state conviction is not meant to consider anew the jury's guilt determination or to replace the state's system of direct appellate review. *Wright,* 505 U.S. at 292, 112 S.Ct. 2482. Thus, a defendant is entitled to relief only if "no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 324, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (footnote omitted); *see also George v. Angelone,* 100 F.3d 353, 357 (4th Cir.1996), *cert. denied,* 519 U.S.

1103, 117 S.Ct. 854, 136 L.Ed.2d 829 (1997).

*Wilson v. Greene,* 155 F.3d 396, 405–406 (1998). With regard to Counts Ten and Eleven of the Indictment in the underlying state court action, it simply cannot be the that no rational trier of fact could find the petitioner guilty of Second Degree Sexual Assault.

As noted by Magistrate Judge Seibert in his R & R, however, there is a clear difference between the specific language of the Indictment and the evidence presented at trial. Magistrate Judge Seibert concluded that this difference amounted to a mere variance, as opposed to a constructive amendment, and this Court agrees. As noted above, the actual language of Counts Ten and Eleven of the Indictment charged, in pertinent part, that the petitioner had "unlawfully and feloniously" engaged in sexual intercourse with B.H., a minor, a person known to the Grand Jury without that person's consent, and the lack of consent resulted from forcible compulsion, against the peace and dignity of the State and in violation of West Virginia Code § 61–8B–4(a)(2). (Doc. 7, Ex. A at 5–6). B.H. did not testify to sexual intercourse, but rather to sexual intrusion. Thus, the Indictment charged Second Degree Sexual Assault by sexual intercourse, while the evidence adduced at trial amounted to Second Degree Sexual Assault by sexual intrusion. The United States Court of Appeals for the Fourth Circuit has expressly addressed the difference between a variance and a constructive amendment of an Indictment. In this regard, the Fourth Circuit Court of Appeals has defined a variance as follows:

> A variance occurs when the facts proven at trial support a finding that the defendant committed the indicted crime, but the circumstances alleged in the Indictment to have formed the context of the

defendant's actions differ in some way nonessential to the conclusion that the crime must have been committed.

*United States v. Floresca,* 38 F.3d 706, 709 (1994). In contrast, the Fourth Circuit Court of Appeals has defined a constructive amendment as follows:

A constructive amendment to an Indictment occurs when either the government (usually during its presentation of evidence and/or its argument), the court (usually through its instructions to the jury), or both, broadens the possible bases for conviction beyond those presented by the grand jury.

*Id.* at 710.

Magistrate Judge Seibert concluded that what occurred in the underlying state court trial amounted to a variance between the facts proven at trial and the circumstances alleged in the Indictment. This Court agrees. The facts proven at trial do support a finding that the defendant committed the indicted crime of Second Degree Sexual Assault but that he committed that crime by means of sexual intrusion. Because West Virginia Code § 61–8B–4(a) provides two alternative ways of committing the offense of Second Degree Sexual Assault, a finding of sexual intercourse is, in this case, nonessential to the conclusion that the petitioner committed the crime of Second Degree Sexual Assault. By instructing the jury on sexual intrusion, the trial court did not broaden the possible bases for conviction beyond those presented by the grand jury. To the contrary, based on the trial court's instructions, the jury could still only convict the defendant of Second Degree Sexual Assault.

### C. The Variance in this Case Did Not Prejudice the Petitioner

After determining that what occurred in the underlying state court trial amounted to a mere variance between the facts proven at trial and the circumstances alleged in the Indictment, Magistrate Judge Seibert addressed the issue of whether the variance rose to the level of a constitutional violation. He found that it did not, since the petitioner was not prejudiced by the variance. The petitioner objects to the Magistrate Judge's conclusion that no prejudice occurred.

The United States Court of Appeals for the Fourth Circuit has addressed the issue of when a variance violates the Constitution as follows:

not all differences between an Indictment and the proof offered at trial, rise to the "fatal" level of a constructive amendment. *See* [*United States v.*] *Redd,* 161 F.3d [793] at 795 [ (4th Cir. 1998) ]. When different evidence is presented at trial but the evidence does not alter the crime charged in the Indictment, a mere variance occurs. *See id.*

A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense. *See id.*

*United States v. Randall,* 171 F.3d 195, 203 (1999). Based on his review of the record, Magistrate Judge Seibert found that the petitioner was not prejudiced by the variance. This Court agrees.

As Magistrate Judge Seibert noted, the petitioner was aware from the inception of the state court criminal action against him that he was charged with the offense of Second Degree Sexual Assault. The charge of Second Degree Sexual Assault never changed, only the method by which it was proven did so, and the West Virginia statute in effect at that time expressly provided that the offense of Second Degree Sexual Assault could be proven by

either a showing of sexual intercourse or sexual intrusion. Thus, this Court agrees with Magistrate Judge Seibert that it is impossible for the petitioner to show that his defense was hindered by the variance since he was on notice from the very beginning of the criminal proceedings against him that the State was attempting to prove that he had committed Second Degree Sexual Assault against B. H., and that the State could do so by either a showing of sexual intercourse or sexual intrusion.

The petitioner asserts in his Objections that it is speculation on the Magistrate Judge's part to say that his theory of defense, namely, that the alleged victim fabricated the allegations, would have remained the same regardless of whether he was indicted for Second Degree Sexual Assault by means of sexual intercourse or sexual intrusion. In this regard, the petitioner contends that "[n]o record exists as to what the Petitioner's defense would have been if he was properly informed of the State's theory of these charges." (Doc. 47 at 7). While the petitioner may be correct that this is, technically, speculation on the part of the Magistrate Judge, it is very hard for this Court to conceive of how the petitioner's defense to charges of Second Degree Sexual Assault by sexual intrusion would have been any different from his defense to charges of Second Degree Sexual Assault by sexual intercourse, when both charges would refer to acts against the very same victim, B.H., on the very same two occasions.

Finally, the petitioner asserts in his Objections that the Magistrate Judge's R & R "does not appear to make a finding as to whether the indictment, as charged, would act to bar the Petitioner from further prosecution." (Doc. 47 at 7). The Court is puzzled by the petitioner's assertion in this regard, insofar as Magistrate Judge Seibert expressly notes the following in his R & R:

Finally, the petitioner has been convicted of the crime of Second Degree Sexual Assault for the two incidents specifically alleged in counts 10 and 11 of the Indictment. These are not separate crimes, but alternative methods of proving the same crime. Thus, the petitioner is in no danger of being exposed to a second prosecution for this same offense.

(Doc. 25 at 43). Through the foregoing statement, the Magistrate Judge very clearly held that, because the petitioner was convicted of the crime of Second Degree Sexual Assault for the two incidents alleged in Counts Ten and Eleven of the Indictment, he is in no danger of being exposed to a second prosecution for this same offense.

For all of the foregoing reasons, it is

**ORDERED** that Magistrate Judge Seibert's July 29, 2010, Report and Recommendation (Doc. 43) be, and is hereby, **ORDERED ADOPTED.** Accordingly, it is

**ORDERED** that:

1. The petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* (Doc. 1) be, and the same is hereby, **GRANTED** with regard to the petitioner's contention that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va. Code § 61–8B–4 on Counts Ten and Eleven of the Indictment;

2. The respondent's Motion for Partial Summary Judgment (Doc. 29) be, and the same is hereby **GRANTED** with regard to the petitioner's contention that his due process rights were violated as to Counts Ten and Eleven of the Indictment when the state court instructed the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the Indictment.

In light of the Court's determination that the petitioner's Petition Under 28 U.S.C. § 2254 for a Writ of *Habeas Corpus* should be granted with regard to the petitioner's contention that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W. Va.Code § 61–8B–4 on Counts Ten and Eleven of the Indictment, this Court **ISSUES** a writ of *habeas corpus,* **VACATES** the sentences imposed on the petitioner with regard to Counts Ten and Eleven of the Indictment, and **REMANDS** this case to the Circuit Court of Ohio County, West Virginia, for re-sentencing. It is further

**ORDERED** that the above-styled civil action is **DISMISSED** and **RETIRED** from the docket of this Court. It is further

**ORDERED** that, should the petitioner desire to appeal the decision of this Court, written notice of appeal must be received by the Clerk of this Court within thirty (30) days from the date of the entry of the Judgment Order, pursuant to Rule 4 of the Federal Rules of Appellate Procedure. The $5.00 filing fee for the notice of appeal and the $450.00 docketing fee should also be submitted with the notice of appeal. In the alternative, at the time the notice of appeal is submitted, the petitioner may, in accordance with the provisions of Rule 24(a) of the Federal Rules of Appellate Procedure, seek leave to proceed *in forma pauperis* from the United States Court of Appeals for the Fourth Circuit.

It is so **ORDERED.**

## REPORT AND RECOMMENDATION

JAMES E. SEIBERT, United States Magistrate Judge.

### I. *Procedural History*

On March 19, 2007, the petitioner initiated this action by filing a *pro se* Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus. [Doc. 1] On March 23, 2007, the undersigned conducted a preliminary review of the file and issued a Report and Recommendation ("R & R") recommending that the petition be dismissed as successive. [Doc. 4] The petitioner filed objections on March 28, 2007. [Doc. 5]

On May 27, 2008, counsel entered an appearance on behalf of the petitioner. [Doc. 6] On that same date, counsel filed a Motion and Supporting Memorandum of Donald R. Barbe for Resolution of Objections. [Doc. 7] Over the petitioner's objections, the R & R was adopted and the petition denied on May 29, 2008, 2008 WL 2225840. [Doc. 11]

The petitioner filed a Notice of Appeal on June 25, 2008. [Doc. 14] On June 22, 2009, 335 Fed.Appx. 332, the Fourth Circuit Court of Appeals vacated the Order dismissing the petitioner's habeas petition as successive and remanded the case to this court for further proceedings. [Doc. 20]

On December 22, 2009, the case was referred to the undersigned pursuant to 28 U.S.C. § 636 and LR PL P 83.13, *et seq.* [Doc. 25] On December 29, 2009, the undersigned directed the respondent to show cause why the petition should not be granted. [Doc. 26] The respondent filed a Response and a Motion for Partial Summary Judgment [Doc. 29] and a Memorandum in Support [Doc. 30] on January 27, 2010. The petitioner filed a response on February 26, 2010. [Doc. 36]

On March 26, 2010, the undersigned conducted a review of the respondent's Motion for Partial Summary Judgment and the petitioner's response thereto. [Doc. 38] The undersigned determined that the petition raises two grounds for relief related to

counts 10 and 11 of the petitioner's state court indictment: (1) he was improperly sentenced under an *ex post facto* law; and (2) his due process rights were violated when the state court impermissibly broadened the charged offense. *Id.* at 1. With respect to ground two, the undersigned directed the respondent to file a supplemental response. *Id.* at 3.

On April 16, 2010, the respondent filed a Supplemental Memorandum of Law in Support of Motion for Partial Summary Judgment. [Doc. 39] With permission of the Court, the petitioner filed a response in opposition on June 7, 2010. [Doc. 42] Accordingly, this case is ripe for review.

## II. *Petitioner's Conviction and Sentence*

On September 13, 1999, a grand jury sitting in Ohio County, West Virginia, returned a 17–count indictment against the petitioner for three counts charging Sexual Assault in the First Degree (Counts 1–3); three counts charging Incest (counts 4–6); three counts charging Sexual Abuse by a Custodian (Counts 7–9); six counts charging Sexual Abuse in the First Degree (Counts 10–15); and two counts charging Sexual Assault in the Second Degree (Counts 10–15). *See Barbe v. McBride,* 5:04cv53 (N.D.W.Va. July 8, 2008); *see also* [Doc. 7] at Pet's Ex. G. In counts 1–9, the petitioner was charged with committing various sex crimes against J.M., a minor. Pet's Ex. G. In counts 10 and 11, the petitioner was charged with committing Sexual Abuse in the First Degree against B.H., a minor. *Id.* In counts 12–17, the petitioner was charged with committing various sex crimes against S.S., a minor. *Id.*

In December of 1999, a jury found the petitioner guilty of two counts Sexual Assault in the First Degree (Counts 2 and 3); two counts of Incest (Counts 5 and 6); two counts of Sexual Abuse by a Custodian (Counts 8 and 9); and two counts of Sexual Assault in the Second Degree (Counts 10 and 11). *See Barbe v. McBride,* 5:04cv53 at Resp't Ex. 2. The petitioner was acquitted of counts 1, 4, 7 and 12–17. *Id.* On February 1, 2000, the petitioner received a total aggregate sentence of not less than 80, nor more than 190 years in the West Virginia Penitentiary.[1] The petitioner's appeal was denied. [Doc. 7] at Pet's Ex. E.

On February 26, 2001, the petitioner filed his first State habeas petition. *Id.* at Pet's Ex. F. That petition was denied on August 3, 2001. *Id.* at Pet's Ex. G. Nonetheless, after the West Virginia Supreme Court of Appeals ordered that counsel be appointed for the petitioner, he submitted an amended petition on September 24, 2002. *Id.* at Pet's Ex. H. The amended petition was also denied. *Id.* at Pet's Ex. I. An appeal of that decision was denied on February 11, 2004. *Id.* at Pet's Ex. K.

On May 6, 2004, the petitioner filed his first federal habeas petition. *Id.* at Pet's Ex. L. That petition was denied by this court on September 28, 2005, 2005 WL 6128996. *Id.* at Pet's Ex. N. The Court granted the petitioner a Certificate of Appealability and he appealed to the Fourth Circuit. *Id.* at Pet's Ex. O. On April 7, 2008, the Fourth Circuit held that the petitioner's "confrontation right was indisputably contravened ... by the state circuit court's application of a *per se* rule restricting cross-examination of the prosecution's expert under the state rape shield law." *Barbe v. McBride,* 521 F.3d 443 (4th Cir.

---

1. Specifically, the petitioner was sentenced to consecutive sentences of 15 to 35 years on Counts 2 and 3; 5 to 15 years on Counts 5 and 6; 10 to 20 years on Counts 8 and 9; and 10 to 25 years on Counts 10 and 11. *Barbe v. McBride,* 5:04cv53 at Resp't Ex. 3.

2008). Accordingly, the petitioner was afforded habeas relief as to his six convictions relating to J.M. (Counts 2–3, 5–6 and 8–9). *Id.* Thus, the only convictions remaining are Counts 10 and 11 of the indictment which pertain to the alleged victim B.H.

In the Order denying the petitioner's first federal habeas petition, this court also noted that the petitioner's objections to the R & R contained Ex Post Facto Claims which were not exhausted. [Doc. 7], Pet's Ex. N at 32–33. Thus, the Court dismissed those claims without prejudice for that reason. *Id.* As a result, the petitioner promptly filed a second state habeas petition to exhaust his Ex Post Facto claim. *Id.* at Pet's Ex. P. The petitioner's second state habeas petition was denied on March 21, 2006, and his appeal was denied on December 6, 2006. *Id.* at Pet's Ex. Q–R. This action followed.

### III. *Contentions of the Parties*

The parties appear to agree that there are two claims at issue in the instant case:

(1) whether the petitioner's *ex post facto* rights were violated when the sentencing court sentenced him under the 1991 version of W.Va. Code 61–8B–4 on counts 10 and 11; and

(2) whether his due process rights were violated on those same two counts when the court charged the jury on "sexual intrusion," rather than "sexual intercourse" as stated in the indictment.

### A. *The Petition*

#### 1. *Ex Post Facto Claim*

In the petition, the petitioner asserts that the sentencing court violated the Ex Post Facto Clause of the United States Constitution when it failed to sentence him under the statute in force at the time of the commission of the offenses. The petitioner claims that the trial testimony reveals that the two incidents alleged with B.H. occurred in 1989 or 1990. However, he was sentenced pursuant to a statute that was enacted in 1991. Because the 1991 statute imposed penalties greater than that in effect in 1989 and 1990, the petitioner asserts that this was a clear *ex post facto* violation.

#### 2. *Broadening of the Indictment*

In the petition, the petitioner asserts that the State is obligated "to prove the essential elements alleged in the indictment returned by the grand jury." Petition at 21. He further asserts that in this case, the indictment charged that the defendant engaged in "sexual intercourse" with B.H. while she was "physically helpless." *Id.* at 21–22. Thus, the petitioner asserts that in order to be found guilty of the charge, the State had to prove that he engaged in "sexual intercourse" with B.H. and that she was "physically helpless" at the time. *Id.* The petitioner asserts, however, that under the relevant statutory definitions, the evidence showed neither that "sexual intercourse" took place nor that B.H. was "physically helpless." *Id.* Accordingly, the jury instructions, which defined sexual intrusion and forcible compulsion rather than sexual intercourse and physical helplessness, impermissibly broadened the indictment. *Id.* at 21–23 (quoting *Stirone v. United States*, 361 U.S. 212, 217, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960) ("After an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself.")).

### B. *The Respondent's Response and Motion for Partial Summary Judgment*

In his response to the petition, the respondent generally denies that any violation of the petitioner's rights has occurred. The respondent further concedes that the

petition was timely filed and that the petitioner appears to have colorably exhausted his state remedies.

In his motion for partial summary judgment, the respondent recognizes that the petitioner asserts only one specific ground for relief, to wit:

> Petitioner was denied his right to due process of law as secured by the Fifth and Fourteenth Amendments to the Constitution of the U.S.A. and the Ex Post Facto Clause of the U.S. Constitution, Art. I, Section 10, when Petitioner did not receive the punishment prescribed by statute in force at the time of the commission of the offense.

Resp't Memorandum [Doc. 30] at 3. However, the respondent concedes that within that one ground, the petitioner actually alleges several separate grounds for relief. The respondent identifies those grounds as:

> (1) Ground A—grounds for relief related to J.M. and S.S.;
>
> (2) Ground B—defective indictment; and
>
> (3) Ground C—Ex Post Facto Clause.

*Id.* at 10–12.

With that in mind, the respondent asserts that there are no genuine issues of material fact and that he is entitled to judgment as a matter of law on Grounds A & B for the following reasons:

> (1) the petition asserts claims that are not cognizable in federal habeas corpus;
>
> (2) the petitioner has failed to state a claim upon which relief can be granted; and
>
> (3) the petitioner has failed to demonstrate that he is entitled to relief on those grounds.

Resp't Motion [Doc. 29] at 1. As to Ground C, the respondent concedes that the petitioner is entitled to resentencing on counts 10 and 11 due to an *ex post facto* violation. Resp't Memorandum at 13–14.

### C. The Petitioner's Response to Respondent's Motion for Partial Summary Judgment

In his response, the petitioner concedes that the only counts of the indictment remaining for the Court's determination are counts 10 and 11. Pet's Response [Doc. 36] at 1. Because the respondent has conceded the petitioner's *ex post facto* allegation, the petitioner requests resentencing on that issue. *Id.* at 1–2.

As to his claim that the state court impermissibly broadened the charged offense, the petitioner asserts that his indictment charges that he committed the offense of sexual assault in the second degree by feloniously engaging in "sexual intercourse" with B.H. without her consent. *Id.* at 3. He then asserts that the prosecution failed to produce proof of sexual intercourse at trial. *Id.* However, rather than seek an amended indictment, the court instructed the jury that the petitioner could be found guilty of sexual assault in the second degree if it found that he engaged in sexual intrusion with B.H. without her consent. *Id.* The petitioner asserts that there was a variance between the charge in the indictment and the instructions given to the jury, which impermissibly lowered the State's burden of proof. *Id.* at 4.

### D. The Respondent's Supplemental Memorandum

In his supplemental memorandum, the respondent asserts that the petitioner's *Stirone* claim is unexhausted. Resp't Suppl. Memo. [Dckt. 39] at 2. The respondent contends that neither the petitioner's state habeas petition nor his habeas appeal mention the *Stirone* case or allege that the State improperly broadened the scope of his indictment. *Id.* In fact, the respondent

argues that the petitioner never even raises this issue until he filed his response to the respondent's motion for partial summary judgment. *Id.* at 3. Because, in his opinion, the respondent believes that the State court has not had a meaningful opportunity to consider this allegation of error, the respondent asserts that this ground is unexhausted. *Id.*

Next, the respondent asserts that even if this Court determines that the petitioner's *Stirone* claim is exhausted, such a claim is not cognizable on habeas review pursuant to the Supreme Court's decision in *Hurtado v. California*, 110 U.S. 516, 4 S.Ct. 111, 28 L.Ed. 232 (1884). *Id.* The respondent asserts that the petitioner's claim is actually that his indictment was constructively amended by the jury instructions. However, the respondent contends that although in *United States v. Randall*, 171 F.3d 195, 203 (4th Cir.1999), the Fourth Circuit Court of Appeals held that constructive amendments violate the grand jury clause of the Fifth Amendment, the Supreme Court has held that the due process clause of the Fourteenth Amendment as applied to the states does not incorporate the Fifth Amendment right to be charged by a grand jury indictment. *Id.* at 4–5. The respondent further argues that because the Fifth Amendment right to a grand jury indictment does not apply to state criminal prosecutions, the legality of an amendment to an indictment is primarily a matter of state law. *Id.* at 5.

Moreover, the respondent contends that *Stirone* and *Cotton*, the cases cited by the petitioner in support of his claim, lack precedential value in federal habeas. *Id.* (citing *Ashford v. Edwards*, 780 F.2d 405 (4th Cir.1985) (finding that "[v]ariances and other deficiencies in state court indictments are not ordinarily a basis for federal habeas corpus relief unless the deficiency makes the trial so egregiously unfair as to amount to a deprivation of the defendant's right to due process")). Furthermore, the respondent asserts that in West Virginia, an indictment is sufficient so long as it "substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." *Id.* at 5–6 (quoting Syl. Pt. 3, *State v. Hall*, 172 W.Va. 138, 140–141, 304 S.E.2d 43, 45 (1983)). Because the petitioner was convicted of second degree sexual assault by means of an indictment that set forth the statute down to the appropriate subsection, the respondent asserts that the petitioner is entitled to no relief on this claim. *Id.* at 6.

Finally, the respondent asserts that because W.Va.Code § 61–8B–4(a)(2) sets forth alternate ways of committing the same offense and not two separate offenses, the evidence of sexual intrusion constituted a mere variance and not a constructive amendment. *Id.* In support of this argument, the respondent quotes:

> not all differences between an indictment and the proof offered at trial, rise to the 'fatal' level of a constructive amendment. Where different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant either by surprising him at trial and hindering the preparation of his defense, or by exposing him to danger of a second prosecution for the same offense.

*Id.* (quoting *United States v. Randall*, 171 F.3d at 203). Because the petitioner here was charged with second degree sexual assault, which can be proved if he engaged in either sexual intercourse or sexual intrusion with B.H., alternate methods of

proving the same crime, the respondent contends there was no unfair surprise or disregard for the petitioner's rights. *Id.* at 7–8. Simply put, the respondent asserts that the trial court did not broaden the indictment to include a charge not returned by the grand jury. *Id.* at 8. Thus, the respondent contends that this ground is without merit and should be dismissed. *Id.* at 9.

### E. The Petitioner's Response to the Respondent's Supplemental Memorandum

In his response, the petitioner asserts that his due process claim is exhausted. Pet's Suppl. Resp. [Dckt. 42] at 3. In fact, he notes that he first raised this issue with the Supreme Court of Appeals as far back as the appeal of his first state habeas petition. *Id.* The petitioner further asserts that he raised this issue in this case several times prior to his response to the respondent's motion. *Id.* at 3–4. Thus, the petitioner asserts that his claim has been properly raised and should not be dismissed for the failure to exhaust.

As to the substance of his claim, the petitioner asserts that the respondent has misstated the law. *Id.* at 4. He asserts that the federal standard for determining a due process violation is substantially different than the State standard. *Id.* Thus, regardless of the State's constitutional requirements, on federal habeas, a state court indictment must satisfy federal due process requirements. *Id.* The petitioner asserts that it does so only when it "1) contains the elements of the crime so as to permit the accused to plead and prepare an adequate defense, and 2) allows the disposition to be used as a bar in a subsequent prosecution." *Id.* (citing *Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962)). The petitioner asserts that the indictment in

this case fails on both grounds and he is therefore entitled to relief. *Id.* at 5.

The petitioner next asserts that amending the charge from "sexual intercourse" to "sexual intrusion" was a constructive amendment to the charge, and not a mere variance as the respondent contends. *Id.* Noting the difference between a variance and a constructive amendment, the petitioner argues that the state court erred in this case and constructively amended his indictment because its instructions changed the material facts charged in the indictment. *Id.* at 6. Because the State failed to present evidence of a material element of the charge—sexual intercourse—the petitioner argues that the state court constructively amended the charges against him. *Id.* at 7–8.

### IV. Standards of Review

#### A. Summary Judgment

The Supreme Court has recognized the appropriateness of Rule 56 summary judgment motions in habeas cases. *See Blackledge v. Allison,* 431 U.S. 63, 80, 97 S.Ct. 1621, 52 L.Ed.2d 136 (1977). So too has the Fourth Circuit Court of Appeals. *Maynard v. Dixon,* 943 F.2d 407 (4th Cir. 1991). Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

Motions for summary judgment impose a difficult standard on the moving party; for it must be obvious that no rational trier of fact could find for the nonmoving party. *Miller v. Federal Deposit Ins. Corp.,* 906 F.2d 972, 974 (4th Cir.1990). However, the "mere existence of a scintilla of evidence" favoring the nonmoving party will

not prevent the entry of summary judgment. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). To withstand such a motion, the nonmoving party must offer evidence from which a "fair-minded jury could return a verdict for the [party]." *Id.* "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Felty v. Graves–Humphreys Co.,* 818 F.2d 1126, 1128 (4th Cir.1987). Such evidence must consist of facts which are material, meaning that the facts might affect the outcome of the suit under applicable law, as well as genuine, meaning that they create fair doubt rather then encourage mere speculation. *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. It is well recognized that any permissible inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita Elec. Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587–588, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

## B. *Federal Habeas Review Under 28 U.S.C. § 2254*

Notwithstanding the standards which govern the granting of a motion for summary judgment, the provisions of 28 U.S.C. § 2254 must be examined to determine whether habeas relief is proper. Title 28 U.S.C. § 2254 requires a district court to entertain a petition for habeas corpus relief from a prisoner in State custody, but "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Regardless, "[a]n application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that … the applicant has exhausted the remedies available in the courts of the State." 28

U.S.C. § 2254(b)(1)(A). However, the federal court may not grant habeas relief unless the state court's adjudication of the claim:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding.

28 U.S.C. § 2254(d)(1) and (2); *see also Williams v. Taylor,* 529 U.S. 362, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000).

■ The Fourth Circuit Court of Appeals has determined that "the phrase 'adjudication on the merits' in section 2254(d) excludes only claims that were not raised in state court, and not claims that were decided in state court, albeit in a summary fashion." *Thomas v. Taylor,* 170 F.3d 466, 475 (4th Cir.1999). When a state court summarily rejects a claim and does not set forth its reasoning, the federal court independently reviews the record and clearly established Supreme Court law. *Bell v. Jarvis,* 236 F.3d 149 (4th Cir.), *cert. denied,* 534 U.S. 830, 122 S.Ct. 74, 151 L.Ed.2d 39 (2001) (quoting *Bacon v. Lee,* 225 F.3d 470, 478 (4th Cir.2000)). However, the court must still "confine [it's] review to whether the court's determination 'resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'" *Id.* at 158.

■ A federal habeas court may grant relief under the "contrary to" clause "if the state court arrives at a conclusion opposite to that reached by this Court on a

question of law or if the state court decides a case differently that this Court has on a set of materially indistinguishable facts." *Williams*, 529 U.S. at 413, 120 S.Ct. 1495. A federal court may grant a habeas writ under the "unreasonable application" clause, "if the state court identifies the correct governing legal principle from the Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* "An unreasonable application of federal law is different from an incorrect application of federal law." *Id.* at 410, 120 S.Ct. 1495.

■ When a petitioner challenges the factual determination made by a state court, "federal habeas relief is available only if the state court's decision to deny post-conviction relief was 'based on an unreasonable determination of the facts.' 28 U.S.C. § 2254(d)(2). In reviewing a state court's ruling on post-conviction relief, we are mindful that 'a determination on a factual issue made by a State court shall be presumed correct,' and the burden is on the petitioner to rebut this presumption 'by clear and convincing evidence.' " *Tucker v. Ozmint*, 350 F.3d 433, 439 (4th Cir.2003).

■ However, habeas corpus relief is not warranted unless the constitutional trial error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993); *Richmond v. Polk*, 375 F.3d 309 (4th Cir.2004). "Under this standard, habeas petitioners may obtain plenary review of their constitutional claims, but they are not entitled to habeas relief based on trial error unless they can establish that it resulted in 'actual prejudice.' " *Brecht, supra.*

## V. *Analysis*

### A. *Petitioners' Ex Post Facto Claim*

■ Article I, § 10, of the Federal Constitution provides that "[n]o States shall ... pass any ... ex post facto law." The central concerns of this provision are "the lack of fair notice and governmental restraint when the legislature increases punishment beyond what was prescribed when the crime was consummated." *Weaver v. Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981). "To fall within the *ex post facto* prohibition, a law must be retrospective—that is, it must apply to events occurring before its enactment—and it must disadvantage the offender affected by it, by altering the definition of criminal conduct or increasing the punishment for the crime." *Lynce v. Mathis*, 519 U.S. 433, 441, 117 S.Ct. 891, 137 L.Ed.2d 63 (1997) (internal citations and quotations omitted).

In this case, the petitioner contends that the testimony at trial established that the incidents giving rise to counts 10 and 11 of the indictment occurred in 1989 or 1990. However, he was sentenced pursuant to the 1991 version of the charging statute, which increased the maximum sentence from 20 years to 25 years. Thus, the petitioner asserts that his sentences of 10–25 years on counts 10 and 11 violate the Ex Post Facto Clause of the United States Constitution.

The respondent in this case concedes that the testimony at trial established that the alleged events occurred prior to 1991. The respondent also concedes that the petitioner was sentenced pursuant to the 1991 version of the statute. The respondent further concedes that the 1991 version of the statute increased the maximum penalty to 25 years. Thus, the respondent concedes that a violation of the Ex Post Facto Clause occurred in this case and that the petitioner is entitled to relief on this claim.

As to counts 10 and 11,[2] the indictment charged that "sometime between 1988 and 1994," the petitioner committed the offense of Sexual Assault in the Second Degree against B.H, in violation of W.Va.Code § 61–8B–4(a)(2). [Doc. 7] at Pet's Ex. A. Under the 1984 version of § 61–8B–4(a)(2), the penalty for violating this provision of the West Virginia Code was imprisonment "in the penitentiary not less than ten nor more than twenty years." *See* [Doc. 37]. In 1991, the legislature amended § 61–8B–4(a)(2) to change the penalty provision to no less than ten nor more than twenty-five years. *See* Doc. 30 at 14. At sentencing, the petitioner was sentenced to 10–25 years on Counts 10 and 11. *See Barbe v. McBride,* 5:04cv53 at Resp't Ex. 3.

The petitioner's trial occurred in December of 1999. *Barbe v. McBride,* 5:04cv53 at Resp't Ex. 2. At that time, B.H. testified that she was 19 years old. Doc. 7, Pet's Ex. V (excerpts of Petitioner's Trial Transcripts) at 3.[3] She further testified that she could only clearly remember two instances of sexual abuse. *Id.* at 10. Moreover, B.H. testified that these two instances occurred when she was either nine or ten years old.[4] *Id.* at 14, 17. There was no other evidence regarding when the alleged sexual assaults took place. Therefore, given B.H.'s date of birth, and the date of the trial, the testimony thus established that the alleged assaults had to have occurred in 1989 or 1990. Thus, the 1984 version of W.Va.Code § 61–8B–4(a)(2) was in effect at the time the alleged assaults occurred.

Petitioner, however, was sentenced pursuant to the 1991 version of W.Va.Code § 61–8B–4(a)(2). That version of the statute increased the maximum penalty for the crime from 20 to 25 years imprisonment. Accordingly, the petitioner's sentences on counts 10 and 11 of the indictment clearly violate the Ex Post Facto Clause of the United States Constitution and the petitioner is entitled to relief on this ground.

### B. Broadening of the Indictment Claim

#### 1. Exhaustion of State Court Remedies

 A petition for a writ of habeas corpus is not a substitute for pursuing state judicial remedies. See 28 U.S.C. § 2254(b). Absent a valid excuse, a petition for writ of habeas corpus should not be entertained unless the petitioner has first exhausted his state remedies. *Castille v. Peoples,* 489 U.S. 346, 349, 109 S.Ct. 1056, 103 L.Ed.2d 380, *reh'g denied,* 490 U.S. 1076, 109 S.Ct. 2091, 104 L.Ed.2d 654 (1989). To exhaust state remedies, a habeas petitioner must fairly present the substance of his claim to the state's highest court. *Matthews v. Evatt,* 105 F.3d 907 (4th Cir.), *cert. denied,* 522 U.S. 833, 118 S.Ct. 102, 139 L.Ed.2d 57 (1997). "A claim is fairly presented when the petitioner presented to the state courts the substance of his federal habeas corpus claim. The ground relied upon must be presented face-up and squarely; the federal question must be plainly defined." *Id.* at 911. "A litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief . . .

---

**2.** Given the petitioner's acquittal on counts 1, 4, 7, 12–17, and the subsequent vacation of his convictions on counts 2–3, 5–6 and 8–9 by the Fourth Circuit Court of Appeals, the undersigned finds that the only counts remaining at issue in this case are counts 10 and 11.

**3.** B.H. testified that she was born on March 12, 1980. Pet's Ex. V at 3.

**4.** B.H. first testified that she was nine years old (1989) when the alleged assaults took place. Pet's Ex. V at 14. On cross-examination, she later asserted that the assaults took place "nine years ago (1990)." *Id.* at Ex. 17.

by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'" *Baldwin v. Reese,* 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004); *see also Howell v. Mississippi,* 543 U.S. 440, 444, 125 S.Ct. 856, 160 L.Ed.2d 873 (2005).

In West Virginia, the exhaustion of state remedies is accomplished by a petitioner raising the federal issue on direct appeal from his conviction or in a post-conviction state habeas corpus proceeding followed by an appeal to the West Virginia Supreme Court of Appeals. *See Moore v. Kirby,* 879 F.Supp. 592, 593 (S.D.W.Va. 1995); *see also Bayerle v. Godwin,* 825 F.Supp. 113, 114 (N.D.W.Va.1993). A federal court may only consider those issues the petitioner presented to the state court,[5] and "[a]n applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c).

▉▉▉▉ In addition, it is the petitioner's burden to demonstrate that he has exhausted his state judicial remedies. *Breard v. Pruett,* 134 F.3d 615, 619 (4th Cir.), *cert. denied,* 523 U.S. 371, 118 S.Ct. 1352, 140 L.Ed.2d 529 (1998). "The exhaustion requirement is not satisfied if the petitioner presents new legal theories or factual claims for the first time in his federal habeas petition." *Id.* "If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution If a habeas petitioner wishes to claim

that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." *Duncan v. Henry,* 513 U.S. 364, 365, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995). Further, in addition to providing the state court with the facts supporting the claimed constitutional violation, the petitioner must also "explain how those alleged events establish a violation of his constitutional rights." *Mallory v. Smith,* 27 F.3d 991, 994 (4th Cir.1994).

In his first state habeas proceeding, the petitioner alleged as his eighth claim for relief in his amended habeas petition that, "[t]he Court committed error when it permitted the State to materially amend the indictment." [Doc. 7], Pet's Ex. H at 7. Later, in his appeal of that proceeding, the petitioner alleged that "the state did not present any evidence of sexual intercourse, an essential element alleged in the indictment." Resp't Ex. 3 at 28. Moreover, he alleged that the state was confined to the "four corners of the indictment returned by the Grand Jury." *Id.*

In his second state habeas proceeding, the petitioner alleged exactly the same claim that he alleges in the instant case, to wit:

Petitioner was denied his right to due process of law as secured by the Fifth and Fourteenth Amendments to the U.S. Constitution and Article III, Section 10 of the WV Constitution and the Ex Post Facto Clause of the U.S. Constitution, Art. 1, § 10, and Art. III, § 4, of the WV Constitution when petitioner did not receive the punishment prescribed by statute in force at the time of the commission of the offenses.

[Doc. 7], Pet's Ex. P at 12(A). Moreover, like the instant case, in support of his

---

**5.** *Picard v. Connor,* 404 U.S. 270, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971).

second state habeas petition, the petitioner argued that there was an "obvious conflict between the express language of the indictment and statutory provision invoked . . ." *Id.* at 10. In denying the petitioner's second state habeas petition, the state court found that the "contentions relied upon in the Petition have been previously and finally adjudicated." *Id.* at Pet's Ex. Q. Thus, it appears that this claim, however inartfully pleaded, has been raised in state court. Because the state court has had the opportunity to address this issue, it is exhausted.[6]

### 2. *Merits of the Claim*

Count 10 of the petitioner's indictment reads as follows:

That sometime between 1988 and 1994 in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "Sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in *sexual intercourse* with B.H., a minor, a person known to the Grand Jury without that person's consent, and the lack of consent resulted from *forcible compulsion,* against the peace and dignity of the State and in violation of West Virginia Code § 61–8B–4(a)(2).

[Doc. 7] at Pet's Ex. A (emphasis added).

Count 11 of the petitioner's indictment reads as follows:

That sometime between 1989 and 1993 and separate from the incident alleged in Count Ten, in Ohio County, West Virginia, DONALD R. BARBE committed the offense of "Sexual Assault in the Second Degree" in that he unlawfully and feloniously engaged in *sexual intercourse* with B.H., a person known to the Grand Jury without that person's consent, and the lack of consent resulted from *forcible compulsion,* against the peace and dignity of the State and in violation of West Virginia Code § 61–8B–4(a)(2).

*Id.* (emphasis added).

However, at trial, the alleged victim testified to the following events:

A. One time, he was taking me home after a 4–H event and he told—me I was sitting on the front seat with him in his vehicle, and he asked me to lay down or told me to lay down, one or the other. I laid down and had my head in his lap, and, he put his hand down the front of my pants and started massaging my vagina, and—

Q. So—

A. —he would say, "Isn't that more comfortable?"

Q. Did you try to move away from that position?

A. In another instance yes. He laid me down in that same position, but I tried to get back up, and he just pushed me back down with his arm and kept my body laid down flat.

Q. Now, on this other occasion you are speaking of, what did Mr. Barbe do?

---

**6.** The Court also notes that the respondent's contention that the petitioner did not raise this claim in this proceeding until he filed his response to the respondent's motion for summary judgment is inaccurate. In the petition, the petitioner states: "[p]ursuant to Count 10 and Count 11 of the indictment returned by the Grand Jury . . . the State obligated itself to prove the defendant engaged in sexual intercourse with B.E.H." Petition at 21. More-over, the petitioner specifically cites *Ex Parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887) and *Stirone* as the basis for his claim. *Id.* In doing so, the petitioner states, "[a]fter an indictment has been returned its charges may not be broadened through amendment except by the grand jury itself." *Id.* Thus, this claim was clearly presented upon initiation of this case.

A. He held my head down in his lap and put his hand down the front of my pants and massaged my vagina.

Q. With his hand?

A. With his hand.

Q. And his fingers?

A. Yes.

Q. And what did his fingers do when they were massaging your vagina?

A. He was moving his fingers around. I don't know exactly what you're asking me, I'm sorry.

Q. During the time that he was—he had his hand down your pants—

A. Uh-huh.

Q. —and massaging your vagina, was there penetration to any degree of the outside area of your vagina?

A. Yes.

*See Id.*, Pet's Ex. V at 7–8.

In instructing the jury on count ten, the trial court stated:

The offense charged in Count Ten of the indictment in this case is sexual assault in the second degree. One of two verdicts may be returned by you under this count of the indictment. And they are guilty and not guilty.

Sexual assault in the second degree is committed when any person engages in sexual intrusion with another person without the consent of the other person and the lack of consent results from forcible compulsion.

Lack of consent results from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless.

Forcible compulsion means a physical force that overcomes such earnest resistance as might reasonable be expected under the circumstances, be it threat or

intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or another person, or in fear that he or another person will be kidnapped or seized, fear by a child under 16 years of age caused by intimidation, expressed or implied by another person four years older than the victim. For purposes of this definition, resistance includes physical resistance or any clear communication of the victim's lack of consent.

Before the defendant, Donald R. Barbe, can be convicted of sexual assault in the second degree, the State of West Virginia must overcome the presumption that the defendant, Donald R. Barbe, is innocent and prove to the satisfaction of the jury beyond a reasonable doubt that the defendant, Donald R. Barbe, in Ohio County, West Virginia, between 1988 and 1994, did engage in sexual intrusion with another person, BH, without the consent of BH, which lack of consent results from forcible compulsion.

If, after impartially considering, weighing and comparing all of the evidence, both that of the State and that of the defendant, the jury and each member of the jury is convinced beyond a reasonable doubt of the truth of the charge as to each of these elements of sexual assault in the second degree, you may find Donald R. Barbe guilty of sexual assault in the second degree as charged in Count Ten of the indictment.

If the jury and each member of the jury has a reasonable doubt of the truth of the charge as to any one or more of these elements of sexual assault in the second degree, you shall find the defendant, Donald R. Barbe, not guilty.

*See* 5:04cv53 [Doc. 14] Ex. 8 (Pet's Trial Transcripts) at 604–606. The instructions for count eleven are substantially the same. *Id.*

Here, the petitioner alleges that because the indictment specifically charges that the Second Degree Sexual Assault was the result of sexual intercourse, the State should have sought an amendment to the indictment when it became clear that there was no satisfactory proof of sexual intercourse. [Doc. 36] at 3. Instead, the trial court instructed the jury on an element of the crime of Second Degree Sexual Assault—sexual intrusion—which was not charged in the indictment. *Id.* The petitioner asserts that the State was not permitted to broaden his indictment in such a manner and cites to *Stirone v. United States, supra,* in support of this claim. *Id.* at 3–4.

In *Stirone,* the Supreme Court held that a constructive amendment to an indictment violated a defendant's Fifth Amendment right under the grand jury clause. 361 U.S. at 215–16, 80 S.Ct. 270; *see also United States v. Randall,* 171 F.3d at 203. Thus, the finding in *Stirone* is clearly grounded in the Fifth Amendment's right to a grand jury. However, the Fifth Amendment's grand jury clause has never been extended to the states. *See Alexander v. Louisiana,* 405 U.S. 625, 633, 92 S.Ct. 1221, 31 L.Ed.2d 536 (1972); *Hurtado v. California,* 110 U.S. at 538, 4 S.Ct. 111 (1884). Therefore, neither *Stirone* nor the Fifth Amendment right to a grand jury is applicable in this case. *See Alexander* at 633, 92 S.Ct. 1221; *Ashford v. Edwards,* 780 F.2d at 407; *United States ex rel. Wojtycha v. Hopkins,* 517 F.2d 420, 425 (3d Cir.1975); *Blakeney v. Lee,* 2007 WL 1341456 *46–48 (W.D.N.C. May 3, 2007).

 Nonetheless, "[t]he validity of an indictment is subject to measurement against general fourteenth amendment guarantees of due process." *Ballard v. Bengston,* 702 F.2d 656 (7th Cir.1983). The due process clause of the Fourteenth Amendment guarantees a criminal defendant a fair trial. *Alexander v. Louisiana,* 405 U.S. at 631–33, 92 S.Ct. 1221. In other words, a criminal defendant is entitled to receive "notice of the specific charge, and a chance to be heard in a trial of the issues raised in the charge." *Cole v. Arkansas,* 333 U.S. 196, 201, 68 S.Ct. 514, 92 L.Ed. 644 (1948). Such notice must be "reasonable." *Id.; see also In re Oliver,* 333 U.S. 257, 68 S.Ct. 499, 92 L.Ed. 682 (1948) (a defendant's right to *reasonable* notice of the charge against him is applied to the states through the Fourteenth Amendment).

 "Since a state is constitutionally free to dispense with the grand jury indictment altogether ... the legality of an amendment to an indictment is primarily a matter of state law." *Wojtycha,* 517 F.2d at 425 (citing *Beck v. Washington,* 369 U.S. 541, 545, 82 S.Ct. 955, 8 L.Ed.2d 98 (1962)). In West Virginia, "[a]n indictment for a statutory offense is sufficient if, in charging the offense, it substantially follows the language of the statute, fully informs the accused of the particular offense with which he is charged and enables the court to determine the statute on which the charge is based." Syl. Pt. 3, *State v. Hall,* 172 W.Va. 138, 140–141, 304 S.E.2d 43, 45 (1983).

In this case, the petitioner was charged with Second Degree Sexual Assault under West Virginia Code § 61–8B–4(a)(2). Section 61–8B–4(a)(2) states:

(a) A person is guilty of sexual assault in the second degree when:

(1) Such person engages in sexual intercourse *or* sexual intrusion with another person without the person's consent, and the lack of consent results from forcible compulsion; *or*

(2) Such person engages in sexual intercourse *or* sexual intrusion with an-

other person who is physically helpless.

(Emphasis added). The jury instructions charged that "[s]exual assault in the second degree is committed when any person engages in sexual intrusion with another person without the consent of the other person and the lack of consent results from forcible compulsion. Lack of consent results from forcible compulsion or incapacity to consent if a person is deemed incapable to consent when such a person is less than 16 years old, or mentally defective, or mentally incapacitated, or physically helpless." Pet's Trial Transcripts at 604. However, the petitioner's indictment specifically charged that the alleged second degree sexual assault was a result of sexual intercourse and forcible compulsion. [Doc. 7] at Pet's Ex. A. Although the jury instructions comport with the language of the statute, there is a clear difference between the specific language of the indictment and the jury charge. The question then becomes whether this difference rises to the level of a constitutional violation.

■ "A variance occurs when the facts proven at trial support a finding that the defendant committed the indicted crime, but the circumstances alleged in the indictment to have formed the context of the defendant's actions differ in some way non-essential to the conclusion that the crime must have been committed." *United States v. Floresca,* 38 F.3d 706, 709 (4th Cir.1994). In this case, the testimony of the alleged victim as cited herein, was sufficient to prove that a sexual intrusion [7] occurred by means of forcible compulsion.[8] Thus, the testimony at trial clearly supports a finding that the defendant committed the indicted crime of Second Degree Sexual Assault.[9] The indictment, however, specifically charged that the defendant committed the indicted crime of Second Degree Sexual Assault by way of sexual intercourse. Thus, there was a clear variance between the facts proved at trial and the circumstances alleged in the indictment. However, not all variances are violative of the Constitution. *United States v. Randall,* 171 F.3d at 203.

■ "When different evidence is presented at trial but the evidence does not alter the crime charged in the indictment, a mere variance occurs. A mere variance does not violate a defendant's constitutional rights unless it prejudices the defendant by surprising him at trial or hindering the preparation of his defense, or by exposing him to the danger of a second prosecution for the same offense." *Id.* Under West Virginia law, Second Degree Sexual As-

---

7. Pursuant to W.Va.Code § 61–8B–1 (8), sexual intrusion is defined as "any act between persons involving penetration, however slight, of the female sex organ or of the anus of any person by an object for the purpose of degrading or humiliating the person so penetrated or for gratifying the sexual desire of either party."

8. Pursuant to W.Va.Code § 61–8B–1 (1), forcible compulsion is defined as:
 (a) Physical force that overcomes such earnest resistance as might reasonably be expected under the circumstances; or
 (b) Threat or intimidation, expressed or implied, placing a person in fear of immediate death or bodily injury to himself or herself or another person or in fear that he or she or another person will be kidnapped; or
 (c) Fear by a person under sixteen years of age caused by intimidation, expressed on implied, by another person who is at least four years older than the victim.

9. *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979) (when reviewing a claim of the sufficiency of the evidence in federal habeas review, the district court is required to view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt).

sault may be proven through either proof of sexual intercourse or proof of sexual intrusion. W.Va.Code § 61–8B–4(a)(2). The indictment charged the petitioner with Second Degree Sexual Assault and he was convicted of Second Degree Sexual Assault. Therefore, because the evidence at trial did not alter the underlying crime charged a mere variance occurred in this case. Thus, the petitioner's constitutional rights were not violated unless he can show that he was prejudiced by that variance. To make such a showing, the petitioner must show that he was surprised at trial, that the preparation of his defense was hindered, or that he is now exposed to the danger of a second prosecution for the same offense.

Upon a thorough review of the record, the undersigned finds that the variance in this case did not prejudice the defendant.[10] Although the indictment specifically charged that the petitioner had sexual intercourse with B.H., he was aware that the charge against him was Second Degree Sexual Assault. The statute at that time clearly stated that such charge could be proved by either a showing of sexual intercourse or sexual intrusion. The petitioner therefore had reasonable notice that he could be proven guilty under either theory of the crime. For that same reason, the petitioner cannot show that his defense was hindered by the variance, nor does he appear to make that argument.[11] Finally, the petitioner has been convicted of the crime of Second Degree Sexual Assault for the two incidents specifically alleged in counts 10 and 11 of the indictment. These are not separate crimes, but alternative methods of proving the same crime. Thus, the petitioner is in no danger of being exposed to a second prosecution for this same offense. Accordingly, the petitioner's claim that his due process rights were violated as to counts 10 and 11 of the indictment when the court charged the jury on "sexual intrusion," rather than "sexual intercourse" as stated in the indictment, is without merit.

## VI. *Recommendation*

For the reasons stated, the undersigned recommends that the petitioner's § 2254 habeas petition [Doc. 1] be **GRANTED to the extent** that the petitioner contends that his *ex post facto* rights were violated when the state court sentenced him under the 1991 version of W.Va.Code § 61–8B–4 on counts 10 and 11 of the indictment. The undersigned further recommends that this case be remanded to the state court for resentencing in accordance with this finding.

As to the petitioner's claim that his due process rights were violated as to counts 10 and 11 of the indictment when the court instructed the jury on "sexual intrusion," rather than "sexual intercourse" as charged in the indictment, the undersigned recommends that the Respondent's Motion for Partial Summary Judgment [Doc. 29] be **GRANTED** and that this claim be **DISMISSED with prejudice.**

Within **fourteen (14) days** after being served with a copy of this recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections should also be submitted to the Honorable Robert E. Maxwell, United States District

---

**10.** The undersigned notes that counsel did not object to the trial court's instructions.

**11.** The petitioner's theory of defense was that the alleged victim fabricated the allegations.

Thus, his defense was the same whether he was specifically indicted for Second Degree Sexual Assault by means of sexual intercourse or sexual intrusion.

Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Wright v. Collins,* 766 F.2d 841 (4th Cir.1985); *United States v. Schronce,* 727 F.2d 91 (4th Cir.1984), *cert. denied,* 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984).